**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**S.F.B.,** a minor,
by and through his parent and next friend,
**Terri E. Baker**
*

**Terri E. Baker**, individually

Plaintiffs,

v.

**Blue Valley Unified School District, USD 229**
*

**Lee Norman**, in his official capacity, as **Secretary for the Kansas Department of Health And Environment**
*

**Derek Schmidt**, in his official capacity as **Kansas Attorney General**
*

**Laura Kelly**, in her official capacity as **Governor of Kansas**

Defendants

**PLAINTIFFS' COMPLAINT**

The plaintiff Terri Baker, individually, and in her representative capacity, states as follows:

**<u>INTRODUCTION</u>**

**1.** This matter involves the enforcement of K.S.A. 65-508 and K.S.A. 75-6262 regarding vaccinations which condition participation as an unvaccinated child in school, or other activities such as youth programs or child care, with a medical exemption or a requirement that the child is an adherent of a religious denomination whose teachings are opposed to vaccinations.   It also concerns S.F.B.'s right to attend school unvaccinated without any medical or religious exemption as a special needs student under Individuals

with Disabilities Education Act.   While both Kansas statutes recite "adherents of a religious denomination" as a favored religion in the religious objection.   The language clearly is not neutral as between religious beliefs.   The language controls religious doctrine and singles out a particular religious faith that must be associated with a denomination for exclusive state subsidization or blessing,   But to the point: a "religious denomination" is not the oracle of legitimate religious belief.   Faith and belief are completely valid outside the theology of an organized religion.   So to those that identify as adherents of a certain religious denomination opposed to vaccinations favor is granted. To those who are not the approved category of believer these are penalized and do not receive  the  public  benefits.  Kansas  imposes  an  unconstitutional  condition  (the unconstitutional conditions doctrine) which, unless fulfilled, bar all unvaccinated children (including the disabled) having no medical exemption from attending schools, summer camps, or licensed day care facilities.   In the alternative, if S.F.B. is denied enrollment based up being an unvaccinated "susceptible child," or if the Court severs the religious exemption language but leaves the vaccination requirement, the resulting exclusion of S.F.B. as a disabled child would violate the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq* ("IDEA").

**2.** Section 504 of the Rehabilitation Act has been violated because the statute facially discriminates against S.F.B. as a disabled child.   S.F.B. is handicapped under the Act, is qualified to participate in the program, the program receives federal financial assistance, and the program discriminates against plaintiff.   S.F.B. is unable to be "an adherent" in part because of his disability.   The state of Kansas denies the benefit of education or child care solely on account of a religious identity and as such imposes a penalty on the free

exercise of religion for those disfavored.  To those who "are adherents of a religious denomination" the benefits may be received.  To those who have the same religious beliefs but are not associated with a religious denomination, those beliefs are penalized. Such language violates the Establishment clause.  As such, the public benefit of school and child care, which is awarded on secular criteria, is denied to an otherwise eligible group solely because of its religious identity.  That violates the free exercise clause, unless the reason for such a denial meets a strict level of scrutiny.  Distinguishing religious beliefs based upon an association with a religious denomination is not a compelling state interest.

**3.** The statutes and regulations create an unconstitutional condition that forces parents to choose between two constitutional rights: right to education and right to religion.  In order to obtain the constitutional right to education, parents opposed to vaccinations on religious grounds must choose between the right to education or religion.  These statutes coerce parents into relinquishing other protected rights. The rights that S.F.B. must sacrifice to make use of his right to education include his bodily autonomy and a right to privacy. The right that Terri sacrifices is her autonomy to make medical decisions for S.F.B.  Under the school enrollment statutes, it does not permit the parent to actually make the decision to enroll her child unvaccinated because it is premised on the child's beliefs as "an adherent of a religious denomination" rather than a parent's religious faith.

## PARTIES

**4.** Terri is a resident and citizen of Johnson County, Kansas.  She resides in the Blue Valley School District.

**5.** S.F.B. is a minor and resides with his parents.

**6.** Blue Valley Unified School District, "Blue Valley" is a Kansas school district located in Johnson County Kansas. Blue Valley is the recipient of federal funds and is therefore characterized under the law as a place of public accommodation.  S.M.B. is a special needs student at Blue Valley.  The district headquarters are located at 15020 Metcalf Avenue, Overland Park, KS 66223.  Cindy Bowling is the president of and spokesperson for the Blue Valley Board of Education.  That Board is a seven-member elected body that directs and administers the business of the Blue Valley school district and is responsible for, among other things, policy development.  In their official capacities they are to assure that the School District abides by all applicable federal and state laws as well as district policies.

**7.** Laura Kelly is Governor of the State of Kansas.  In her official capacity, the Governor is the chief executive officer of the State of Kansas.  The Governor is declared by art. 1, § 3 of the Kansas Constitution to be the supreme executive power of Kansas. The Governor has some connection with the enforcement of the statutes, KDHE regulations, and DCF policies.

**8.** Derek Schmidt is the Attorney General of the State of Kansas.  In his official capacity, the Attorney General is the chief legal officer of the State of Kansas.  It is his duty to see that the laws of the State are Constitutional, as well as uniformly and adequately enforced.

**9.** Lee Norman, in his official capacity, as Secretary for the Kansas Department of Health and Environment (KDHE), is responsible, in his official capacity, for the administration of Federal Grant Monies, the implementation of KDHE regulations and enforcement of those

regulations regarding immunization.  KDHE licenses school programs, child care facilities, and preschools and sets out requirements for immunization exemptions.

## JURISDICTION AND VENUE

**10.** Plaintiffs bring this action pursuant to, inter alia, the Article VI, Clause 2 of the United States Constitution (the Supremacy Clause) and possibly the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq., 28 U.S.C. § 2201.  This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

**11.** Jurisdiction is predicated on 28 U.S.C. § 1331 because this matter involves federal questions.

*12.* This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57; the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65; and costs and attorneys' fees under 42 U.S.C. § 1988. If successful, the Plaintiffs are entitled to expenses, costs, and attorneys' fees under 20 U.S.C. § 1400, *et seq.*

**13.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all events giving rise to the claims herein occurred within the District of Kansas and all Defendants reside in the District of Kansas.

**14.** At all times relevant to this Complaint the defendants were acting under color of state law.

## FACTS RELEVANT TO ALL CLAIMS

**15.** Immunization and the right to participate in private or public schools in Kansas have historically been connected by statute since 1961. In conjunction with the compulsory school statutes, Kansas legislators have always provided for medical and religious opt out language in various forms.  The legislature has neither expressly nor implicitly articulated any compelling interest in immunizing children, or for that matter, over the religious objections of the child or the parent. When examined, however, the language regarding a religious exemption based upon being "an adherent to a religious denomination" has endured despite the fact that on its face it disfavors individuals who possess the same religious objection but who are not associated with a religious denomination while favoring the same objection when associated with a religious denomination.

**16.** The scheme has evolved into further constitutional problems. In order to exercise the religious objection, the Kansas legislature has inconsistent statutes that, depending on whether the child is enrolled in a private preschool or daycare, or one operated by a school, the religious exemption is changed as to whether the objection is based upon the parent being the adherent versus the child being the adherent.  And as to these preschool children, basing the religious exemption upon a child's purported adherence to a religious denomination is nonsensical to preschool children too young to even formulate a religious belief.

**17.** The Kansas opt-out scheme, as written in those statutes, and as set out in the defendants' respective regulations and policies, facially, and as applied to S.F.B., provide for unconstitutional, as well as arbitrary and inconsistent applications, of opting out of vaccinations based upon the religious belief of either a parent or child.

**18.** In passing the National Childhood Vaccine Injury Compensation Act, 42 U.S.C. § 300aa-l0 *et seq*., Congress found, "there is today no 'perfect' or reaction-free childhood vaccination on the market.  A relatively small number of children who receive immunizations each year have serious reactions to them.  But it is not always possible to predict who they will be or what reactions they will have." H.R. Rep. 99-908, 99th Cong., 2nd Sess. 1986, 1986 U.S.C.C.A.N. 6344, 1986 WL 31971 (Leg. Hist.).

**19.** In Kansas parents are of course free to take on that risk and immunize their own child which is one's right as a parent. Many vaccines are given for diseases that either are not contagious or are not designed to prevent transmission.  Instead, they are designed to protect the person that was vaccinated.  Theoretically, immunizing a child protects that child from another child who is not immunized.  Although S.F.B. (the initials of his full name) has never been vaccinated he has and will continue to develop natural immunities.  A vaccination is not medical treatment which would be a procedure undertaken to remedy an existing disease.  Immunizations, by definition, are not medical care for an existing medical condition. Instead vaccination is an intrusive preventative or prophylactic measure.  Immunization is not a medical necessity.  A vaccine targets a specific strain or strains of a virus and only confers temporary protection against that strain. Natural immunity lasts a lifetime whereas vaccine induced immunity does not. For example, unlike natural measles, measles vaccine does not provide lasting immunity and a substantial proportion of measles cases are reported in those who have been vaccinated against measles. A paradox exists as measles in highly immunized societies occurs primarily among those previously immunized.  Most vaccines lose their effectiveness two

to ten years after being given. This is demonstrated by the need for "booster shots" to purportedly keep vaccine immunity from wearing off. Adult vaccination rates for most vaccines are below 50%.  Vaccine-induced "herd immunity" hasn't existed in the U.S. for decades because of the vaccinations to baby boomers have expired for lack of booster shots.  Half of the U.S. population has lived the last 30 to 40 years of their lives without vaccine protection against many diseases with no epidemics.

**20.** S.F.B. (formerly known as "S.F.M.") was born November 4, 2014 with a heart condition which required open heart surgery when he was six months old.  Terri Baker (Terri) is S.F.B.'s mother.  S.F.B. resides in the home of Terri.  S.F.B. is quite healthy and is in the 97th percentile in height and weight as compared to other children his age.

**21.** S.F.B. is currently enrolled as a special needs student (early childhood special education program) in a Kansas public school. Under the requirements of K.S.A. 72-3120 (formerly K.S.A. 72-1111) and various policies of certain defendants, and as applied to S.F.B., he is required to attend a school vaccinated unless a medical or religious exemption is fulfilled. Terri has a duty, pursuant to K.S.A. 72-3421 (Compulsory attendance of exceptional children at school for receipt of services) "to require such child to attend school to receive the special education and related services which are indicated on the child's IEP or to provide for such services privately."  Thus school attendance is a Kansas legislative condition for S.F.B. to receive special education and related services on his IEP. According to the state of Kansas' interpretation, the IDEA's mandate that such children have a right to access their federally protected right to a free and appropriate education

("FAPE") is only available when the documentation for compliance with State health laws is received. The IDEA makes no such requirement or condition for FAPE.

**22.** S.F.B. has not received any injections with vaccines.  No medical exemption is claimed and he is not a member or adherent of a religious denomination (as the phrase is understood to mean by Terri). S.F.B. attended public school in Kansas in the school year 2018-2019 unvaccinated and without being required to be an adherent of a religious denomination in order to state a religious objection to vaccines.

**23.** K.S.A. 72-6262 (formerly K.S.A. 72-5209) requires that a student be an adherent to a religious denomination in order to attend a school unvaccinated under the religious opt-out exemption.  S.F.B. or Terri do not have any assurance that a religious inquisition will not occur similar to that posited by the Wichita School system which states that "the school reserves the right to require verification by the clergy of the religious tenets that preclude immunizations."

**24.** Vaccination is a medical intervention that carries a risk to the recipient of disability, injury, or death. While the effectiveness of immunizations does not last the effects are irreversible.  Federal vaccine law requires adverse events be reported to federal health officials. There is a federal Vaccine Injury Compensation Program which recognizes adverse effects of vaccinations to individuals. 42 U.S.C. § 300aa-10(a).

**25.** Historically, Terri has engaged in holistic and dietary remedies for herself, including successful holistic treatment for rheumatoid arthritis. Terri has long been of the Christian faith, has a non-profit that assists adoptive parents, abused women, provides sabbaticals for missionaries and pastors, has opposed abortion, has nine children, four of which were

adopted, one of which was saved from an abortion the mother intended, and has taught her children her understanding of Biblical holistic dietary and medical treatment.  Part of that sincerely held faith is having an understanding about vaccines and the risks they pose. Terri has sincere religious convictions and objections to vaccines using cell lines from tissue harvested from abortions.  Certain vaccines contain gelatin which is derived from pigs which may be objectionable to her as well as Christian, Jewish, or Muslim faiths. Many of her daughters share Terri's faith and have not required their children to be vaccinated.   Other of her children have different convictions and have allowed vaccinations for their own children.

**26.** Kansas law places constraints on children in order to protect them or society as a whole based upon their lack of maturity.  Children may not lawfully work or travel where they please.  Children may not make enforceable contracts, drink alcohol, smoke, or even legally consent to sexual contact.  At a certain age, children may not become licensed drivers or get married or obtain general medical or dental treatment without parental consent.  Yet when it comes to vaccinations Kansas law eschews parental prerogatives as the law and policies of the state do not recognize the parent's religious beliefs.  The religious tenets and beliefs of the parents are rendered a nullity.   Rather, it is the "religious teachings of the child" or whether the "child is an adherent of a religious denomination" that determines the sufficiency of the religious objection. Under K.S.A. 38-141, it is the "public policy of this state that parents shall retain the fundamental right to exercise primary control over the care and upbringing of their children in their charge." Under the Kansas statutory scheme for public school enrollment, it does not recognize as

legally sufficient a religious objection to vaccinations for their child based upon the parent's belief.

**27.** Under Kansas law, until S.F.B. reaches 18 years of age, whether he is or is not vaccinated that decision should belong solely to the discretion of his parents.

**28.** This matter is emergent and clearly meets the standards for preliminary injunctive relief. Not only are the statutes unconstitutional and in conflict with and preempted by federal law, indicating a likelihood of success, but as a result of the statutes and regulations the plaintiffs have suffered and continue to suffer irreparable injury and remedies at law, such as monetary damages, cannot compensate.

**29.** These Kansas statutes are invalid and enjoining them will protect constitutional rights.  The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.  Those that are adherents of a religious denomination are favored while those who are not are disfavored.  Plaintiffs challenge the facial validity of the statutes, as well as applied to S.F.B. and Terri.  They bring facial challenges to unconstitutional laws. They bring this suit to seek declaratory and prospective injunctive relief as well as other redress for harms suffered as a result of the statutory language, the defendants' enforcement of the identified statutes including the compulsory school and immunization statutes, and well as defendants' respective regulations and policies regarding religious objections and exemptions to immunization as a condition to attend school programs, daycare, or private and public schools in Kansas unvaccinated.

**30.** S.F.B. has been subject to vaccination coercion by certain enacted Kansas statutes as well as through the respective conduct, regulations, and policies of the defendants and other state agencies.  S.F.B. had previously been adjudicated by a Kansas court to be a Child in Need of Care (CINC). Once in the CINC system, the Kansas Department for Children and Families Agency (DCF) and KVC Behavioral Healthcare, Inc. (KVC), and even though S.F.B. was only in temporary custody, threatened to forcibly immunize S.F.B. unless his parent made a statement that S.F.B. "is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations."  Being coerced by the government, that nonsensical statement was made by a parent in order to avoid S.F.B. being forcibly injected.

**31.** Terri filed suit in Kansas Federal court, case no. 2:17-cv-02574, claiming, among others, that the DCF and KVC opt-out religious condition was unconstitutional. After that suit was filed, both KVC and DCF changed their respective positions about forcing S.F.B. to be immunized, indicating they have no *present* intent to force S.F.B. to be vaccinated (however reserving the right to do so in the future).  S.F.B. is no longer in the custody of KVC or the state of Kansas.  The Kansas CINC court judge would not allow Terri or S.F.B. to litigate any of the claims brought in that federal case.

**32.** K.S.A. 72-6265 (formerly 72-5211a) states that:

> (a) The school board of every school affected by this act may exclude from school attendance, or by policy adopted by any such school board authorize any certificated employee or committee of certificated employees to exclude from school attendance, any pupil who has not complied with the requirements of K.S.A. 72-6262. A pupil shall be subject to exclusion from school attendance under this section until such time as the pupil shall have complied with the requirements of K.S.A. 72-6262. The policy shall include provisions for written notice to be given to the parent or guardian of the

involved pupil. The notice shall (1) indicate the reason for the exclusion from school attendance, (2) state that the pupil shall continue to be excluded until the pupil has complied with the requirements of K.S.A. 72-6262, and (3) inform the parent or guardian that a hearing thereon shall be afforded the parent or guardian upon request therefor.

(b) The provisions of K.S.A. 72-3120 do not apply to any pupil while subject to exclusion from school attendance under the provisions of this section.

33. Unless exempted, S.F.B. is expected to receive numerous and repeated injections as a condition to attending a school.  According to the Centers for Disease Control and Prevention, this would have required S.F.B. to have more than 24 immunizations between birth and his second birthday, and up to five injections for simultaneous administration at some healthcare visits.

34. Terri would like the option of enrolling S.F.B. in a non-accredited private school.  This may include homeschooling S.F.B. She would also like the option of having S.F.B. participate in school programs and licensed child care.  Private school students are required to be vaccinated and proof of vaccination must be submitted to the school's "governing authority" which would be, in the case of homeschooling, Terri.  Because of that requirement, which violates Terri's and S.F.B.'s religious freedoms, S.F.B.'s participation in a non-accredited Kansas private school as unvaccinated is not possible as S.F.B. is not an adherent of a religious denomination.  S.F.B., at age four, is not able to be an adherent.  Homeschooling S.F.B. would require Terri to have S.F.B. vaccinated as a condition of compliance with statutes and policies of the defendants when other similarly situated parents and students are allowed to be exempt.

35. S.F.B. is presently subject to the compulsory school attendance statute. Under K.S.A. 72-3120 paragraph (f) it states that "No child attending public school in this state shall be

required to participate in any activity which is contrary to the religious teachings of the child if a written statement signed by one of the parents or a person acting as parent of the child is filed with the proper authorities of the school attended requesting that the child not be required to participate in such activities and stating the reason for the request." "Any activity" includes being compelled to attend school immunized.

**36.** K.S.A. 72-3120 specifically states "the religious teachings of the child" rather than "religious teachings of the parent."  If the statute was intended to mean the parent's "religious teachings" it does not do so and is vague.  This statute also conflicts with K.S.A. 72-6262. K.S.A. 72-3120 refers to the "religious teachings of the child" while 72-6262 requires the child to be "an adherent of a religious denomination whose teachings are opposed."  Both statutes violate Terri's and S.F.B.'s fundamental right to privacy by interfering with his individual bodily integrity, medical decisions and the right to attend school as well as his own and Terri's fundamental liberty interest in the care, custody and management of S.F.B.

**37.** The defendants have knowledge that the enforcement of the statutes and policies will adversely affect the relationship between Terri and S.F.B.  The statutes unduly burden Terri's and S.F.B's protected relationship and constitutes an unwarranted intrusion into that relationship.  The statutes are unconstitutional and violate the right of Terri to nurture and raise S.F.B. according to her spiritual values as opposed to purportedly those of a four year old child.  S.F.B. is entitled to be raised according to his mother's religious beliefs rather than some belief formed (if possible) at the age of four. The Fourteenth Amendment protects the right of parents to make decisions "concerning the care, custody,

and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). This right provides protection for a parent's decision regarding a child's medical care. *PJ ex rel Jensen v. Wagner*, 603 F.3d 1182, 1197 (10th Cir. 2010). Not being immunized does not endanger S.F.B. or anyone else's life.

**38.** Vaccinations are not medically necessary but they are a medical procedure.   The statutory procedure recognizing a child's (but not a parent's) religious beliefs affects Terri's right to direct S.F.B.'s medical care.   Requiring a four year old to have a "religious teaching" is nonsensical and deprives S.F.B. of a benefit which other similarly situated children who are older can obtain without any compelling state interest.   The statute, by negating parental consent, separates Terri from S.F.B. and adversely affects her family relationship with S.F.B.

**39.** The statutes, Blue Valley, and KDHE policies do not define "adherent" and do not provide any guidance as to what a student must demonstrate, do, or believe in order to meet the definition of an "adherent of a religious denomination."   There is no guidance provided in the statute or any defendants' policies as to how a parent is to discern whether a four year old is an "adherent of a religious denomination whose religious teachings are opposed to such tests or inoculation."

**40.** Plaintiff S.F.B. is subject to and must comply with Kansas law, the conduct and policies of Blue Valley and KDHE in order to attend school without vaccinations.

**41.** At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to Defendants, which acted under color of a statute, regulation, custom, or usage of the State of Kansas.

**42.** The impact of S.F.B.'s right not to be vaccinated along with chilling and deterring Terri and S.F.B. from exercising their constitutional rights constitutes imminent and irreparable harm to Terri and S.F.B. in the manner in which the defendants apply their policies and statutory interpretation through policy and practice.

**43.** Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of its rights under the Kansas or United States Constitution.

**44.** Unless the conduct of Defendants is declared unconstitutional and enjoined, the plaintiffs suffer irreparable injury.

**CAUSES OF ACTION**
**(Terri and S.F.B. v Blue Valley)**
**Counts 1-9**
**\*\*\***
**Count 1**
**Violation of Kansas Bill of Rights**

**45.** Plaintiffs re-allege each allegation above as fully set forth.

**46.** Blue Valley is a political subdivision or municipal corporation.

**47.** In the Blue Valley Special Needs Handbook, it states that "consent is always to be 'informed consent.'"  The Handbook states that to obtain informed consent, "the parent has been fully informed of all information relevant to the activity for which consent is sought...."  Yet in Blue Valley and KDHE literature and forms, sometimes partial information is provided about the requirement for immunizations without reciting the legal exemptions which leaves the reader uninformed.

**48.** Blue Valley School Board policy 3113.2 states in part that students must have "received the tests and immunizations required by the Kansas Department of Health and

16

Environment." It also states that "failure to be current in immunizations or to provide the District with a state-approved alternative to immunizations shall result in the student's exclusion from school until such time as the information is furnished." The policy also provides a statement that "Kansas law provides the following alternatives to immunization: An annual written statement signed by a licensed physician stating that the physical condition of the child to be such that the tests or inoculations would seriously endanger the life or health of the child, or a written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations."

**49.** Blue Valley School Board Policy 2700 states that "parents may object to mandatory vaccinations due to religious beliefs." The policy does not identify who must possess the religious belief and does not specifically require anyone to be an adherent of a religious denomination.

**50.** Blue Valley has published a letter for the 2019-2020 school year and states that "all health forms must be completed and returned to the school nurse prior to the first day of school." In that literature it states that "Kansas law provides the following alternatives to immunizations:... A written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such inoculations." The form letter provides a signature line for a Blue Valley school nurse.

**51.** According to Blue Valley, immunization falls under Health Services and the Blue Valley school nurse administrates and enforces (or participates in that enforcement) the immunization policies of Blue Valley and/or the school board or KDHE.

**52.** S.F.B. attended public preschool in the Blue Valley Unified School District 229.  In order for S.F.B. to attend the preschool unvaccinated in the school year 2018-2019, S.F.B.'s preschool required a statement be given regarding a religious objection.  The following statement was provided:

> In response to our inquiry about an immunization exemption for [S.F.B.] in order to attend ███████████████, you directed us to write a letter stating it is against our religion.  Terri and I make that statement in this letter. We also acknowledge that the school nurse has a policy that if there is an outbreak of a vaccine-preventable disease, that Sylas will not be permitted to attend school until 21 days after the last case of outbreak.
> We look forward to the school year and are excited for Sylas.

**53.** Based upon that statement, S.F.B. was permitted to attend school unvaccinated.

**54.** The statement provided to Blue Valley did not reference S.F.B. being an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations.

**55.** The statement appears to satisfy the requirements of School Board policy 2700 but would not meet the requirement of 3113.2.

**56.** S.F.B. is not an adherent of a religious denomination if adherent means "follower, supporter, one who upholds (a leader, cause, etc.)" and "denomination" means some recognized organization like Baptist or Roman Catholic.  Moreover the K.S.A. 72-6262 opt-out statement is nonsensical when applied to a pre-school age child such as S.F.B. who cannot be an adherent or formulate this kind of spiritual belief or conviction.  As the statement provided to Blue Valley indicated, Terri objected to vaccinations for her son stating it is contrary to her spiritual beliefs.

**57.** Because a preschool student may not be able to become "an adherent" until older, the statutory and regulatory scheme discriminates between students too young to become adherent – thus not providing any religious exemption – and those older students who have that ability.

**58.** To require S.F.B. to become "an adherent" at age four and that he adheres to another organized religious denomination's theology favors one religion over another and is discriminatory.  Such a requirement only allows for a certain category of students.  Under the statutory scheme, students must identify with a religious denomination in order to qualify for the religious exemption which excludes other students and parents possessing the same beliefs but who don't identify with any religious denomination.

**59.** So S.F.B. attended the Blue Valley Public School system as a special needs student and Terri provided a religious exemption statement but not one that conforms to the regulation or policies of KDHE or K.S.A. 72-6262.  S.F.B. was allowed to attend the school for the 2018-2019 school year unvaccinated.

**60.** Blue Valley discriminates as to which students can participate in public education based upon a certain religious belief and expression. Blue Valley favors or accommodates certain religious practices that merit exemption from vaccines but not other religious practices.

**61.** Blue Valley disfavors certain individuals based on their affiliation with a religious group labeled a "religious denomination." Blue Valley favors individuals who are affiliated with a religious denomination which is prohibited by the Establishment Clause.

**62.** At times, Blue Valley may give the benefit of public school education to the unvaccinated student when the student is an adherent of a religious denomination while denying that same benefit of to those who are not adherents of a religious denomination but who hold the same beliefs.  At other times, and in the case of S.F.B., Blue Valley does not make that requirement.

**63.** K.S.A. 72-6262, together with other statutes, regulations, and policies of Blue Valley, KDHE, and the Board of Education, a combined system of individualized exemptions for vaccination requirement for enrollment in school is created.  Terri has sincerely held religious beliefs about vaccinations.  Terri has objections to vaccinations for her son based upon her own religious beliefs but that is not recognized.  This materially burdens Terri's free exercise of religion and her right to parent.  Rather, the religious exemption is based upon a fiction that a four year old boy can formulate religious beliefs sufficient to be "an adherent" – and that to some "religious denomination."  That statute and policies burdens Terri's exercise of her parental rights as well as her exercise of speech, association, and religion.

**64.** K.S.A. 72-6262, K.S.A. 65-508, as well as the regulations and policies of the defendants, are hostile to certain religions and are not religion-neutral. In one Blue Valley Kindergarten brochure it states "Families are required to have their child fully immunized prior to school entrance" but that statement is a misrepresentation as it omits critical information as to medical and religious exemptions. Another Blue Valley policy states "All immunization decisions should be made by the family physician or the Johnson County Health Department" which is hostile to and contrary to Terri's parental rights.

Historically, in Kansas, immunization decisions for a parent's minor child are vested in the parent and not government.

**65.** Blue Valley also promises in an "official notice" that it "prohibits discrimination on the basis of...religion." But Blue Valley does discriminate on the basis of religion.  The conduct and policies of Blue Valley give preference to certain categories of individuals depending on their religious affiliation.  The effect of these is that both Terri and S.F.B.'s religious practices are inhibited because, in order to qualify for a religious exemption, must state that S.F.B. is "an adherent of a religious denomination."  Thus the statute, KDHE, and Blue Valley make available to certain individuals who are adherents to a religious denomination the statutory benefit for which other individuals (who may be adherents of the same spiritual beliefs (but not of a religious denomination)) are denied.  Thus those students who adhere to an unrecognized religious group or possess their own personal religious beliefs apart from a religious denomination are not eligible to attend school unvaccinated exercising a religious objection.

**66.** The religious liberty provisions of the Kansas Constitution were not intended merely to mirror the federal First Amendment.  Kansas state courts have held that Section 7 of the Kansas Bill of Rights of the Kansas Constitution is broader in protections than those of the First Amendment to the federal Constitution. Section 7 prohibits the state of Kansas from: (1) infringing upon the right to worship God according to the dictates of conscience; (2) compelling any person to attend or support any form of worship; (3) controlling or interfering with the rights of conscience; and (4) giving any preference by law to any religious establishment or mode of worship.

**67.** The statutes interfere with Terri's right of conscience because they provide no conscience exemption for Terri in regards to S.F.B. being exempted from vaccinations. Moreover, neither the statutes nor Blue Valley policy recognize moral and philosophical views not within the confines of a religious belief as a basis to object to vaccinations. Terri, as parent, is faced with the choice of either making a statement about a four year old son's purported religious beliefs or his adherence to a religious denomination in order to enroll her son in a Kansas accredited or unaccredited school or refuse to which S.F.B. is denied access to an otherwise free public education.  The rights of Terri's conscience are violated in contravention of the Kansas Bill of Rights.

**WHEREFORE** the plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

## Count 2
## Violation of the Kansas Preservation of Religious Freedom Act

**68.** Plaintiffs re-allege each allegation above as fully set forth.

**69.** Discrimination against or in favor of a religious organization on religious grounds is expressly prohibited by the KPRFA. Blue Valley and KDHE should protect S.F.B.'s fundamental human, civil, constitutional and statutory rights.  A fundamental human right is to be acknowledged as a four year old with physical and mental limitations such that S.F.B. cannot formulate or communicate religious beliefs about immunizations.

**70.** S.F.B. is not receiving adequate and human treatment because of Kansas statutes, KDHE regulations and policy, and Blue Valley's enforcement which has imposed impossible, unfair, and unconstitutional religious requirements upon both Terri and S.F.B. to receive the benefit of S.F.B.'s personal integrity and dignity in not being immunized.

**71.** The accommodations that Blue Valley and KDHE have provided create an inextricable linkage between the efficacy of Terri's statement regarding religion and S.F.B.'s bodily integrity.  Both defendants have created illegal burdens on Terri's and S.F.B.'s religious exercise because of the specific language required and the associated administrative steps the objector must take regarding other religious objections.  Because the penalty for noncompliance KDHE policy and Blue Valley enforcement is high (either take permanent and irreversible immunization against religious objections or else be denied the benefit of school) the burden KDHE and Blue Valley impose on both Terri and S.F.B. is necessarily substantial.

**72.** A child's religious affiliation is a right that properly remains with the parent of a dependent child, particularly S.F.B., who is too young to do so.  S.F.B. should have, but has been prohibited by the State, to prohibit state-directed immunization on the ground of his parent's religious tenets and beliefs.

**73.** The Kansas immunization statutes, KDHE, and Blue Valley require S.F.B. to formulate a religious belief, when he cannot, vicariously speak, when he cannot, and to associate with a particular kind of religious denomination as an adherent, when he cannot. And how would anyone ascertain whether S.F.B.'s beliefs about immunizations are religious in nature and sincerely held?

**74.** The public school immunization statutes, and as interpreted by KDHE and Blue Valley, do not allow a religious objection based upon the beliefs of either parent.  Instead, they require that the objection to be based on an individual's interpretation of some religious denomination's tenets.

**75.** The immunization statutes, and the KDHE policy, all of which is enforced by Blue Valley, deny the benefit of a student not being vaccinated to nondenominational or nonsectarian individuals who are members or adherents of any religious denomination, and also denies this benefit to children who have a sincerely held individual religious belief not linked to any religious denomination. This denies the benefit to children who have a religious objection but also happen to be adherents to a religious denomination or church that do not have explicit policies on immunization but leave those matters to the individual's religious tenet and conscience.

**76.** S.F.B. has a right to a parent / child relationship with all the benefits thereof including the fundamental right to have a parent decide his religious upbringing and religious associations. The statute, KDHE policy, and Blue Valley, as written and as applied, supplant S.F.B.'s right to have his parent as his advisor in his moral and religious development.

**77.** Neither KDHE nor Blue Valley should be able to require S.F.B. to formulate a religious belief at the age of four or in choosing who S.F.B. must associate with in the area of religious teaching without being in direct violation of KPRFA.

**78.** S.F.B. has a right to have decisions made about his religious upbringing or religious beliefs, or lack thereof, by his parent and not KDHE or Blue Valley, or for that matter any state actor.

**79.** KPRFA states:

> In determining whether a compelling governmental interest is sufficient to justify a substantial burden on a person's exercise of religion pursuant to section 2, and amendments thereto, only those interests of the highest order

> and not otherwise served can overbalance the fundamental right to the exercise of religion preserved by this act. In order to prevail under the standard established pursuant to subsection (a) of section 2, and amendments thereto, the government shall demonstrate that such standard is satisfied through application of the asserted violation of this act to the particular claimant whose sincere exercise of religion has been burdened. The religious liberty interest protected by this act is an independent liberty that occupies a preferred position, and no encroachments upon this liberty shall be permitted, whether direct or indirect, unless required by clear and compelling governmental interests of the highest order.

**80.** The imposition by the immunization statutes, KDHE, and Blue Valley that conditions S.F.B.'s right to attend public school with immunization or unless a religious statement about S.F.B.'s beliefs and his association with a religious denomination is made by a parent on S.F.B.'s behalf is not a compelling state interest and is not the least restrictive means of accomplishing this purported compelling interest.   Requiring Terri to be an adherent of a religious denomination in order for S.F.B. to attend a private day care facility is not a compelling state interest.

**81.** The immunization requirement under the statutes, KDHE policy, and Blue Valley's enforcement is triggered when a child seeks to be enrolled in a school or daycare.  If the child is not immunized with any valid exemptions, the child is not allowed to attend and the compulsory school attendance provision does not apply.  Thus unvaccinated children with no exemptions are not required to attend school and are not eligible to attend child care facilities or schools.  But under IDEA, the school is still obligated to provide the same educational and other services.

**82.** The legislative purpose of vaccinations is purportedly for the benefit of children attending school or a child care facility.  Otherwise, if the legislature's interest was directed at all children like S.F.B., rather than the other school or daycare children, the

immunization mandate would be required on every child from birth irrespective of school attendance.

**83.** Blue Valley policy also categorizes non-immunized students as being excluded from attending school during an "outbreak" of a "vaccine-preventable disease" which is undefined, vague, and arbitrary.

**84.** Thus there are many other least restrictive methods available than those stated in the statutes, KDHE regulations or Blue Valley policies.  Similarly there are other least restrictive methods available to the state in protecting other children rather than immunizing S.F.B. unless he or Terri have a religious connection to a religious denomination who teaches opposition to immunizations.

**85.** S.F.B.'s and his parent's religious beliefs outweigh the defendants' respective interests in immunizing S.F.B. under the religious conditions imposed pursuant to the constraints of KPRFA and the U.S. Constitution.

**86.** The immunization statute, as well as the actions of KDHE and Blue Valley in imposing the immunization requirements with its religious test is a governmental action.

**87.** KPRFA is being violated for those reasons stated above and for all the reasons stated in the below causes of action.

**88.** Pursuant to the KPRFA statute K.S.A. 60-5303, Terri and S.F.B. are entitled to (1) Injunctive relief; (2) protective order; (3) writ of mandamus or prohibition; (4) declaratory relief; (5)  actual damages; or (6)  costs and attorney fees determined by the court. The Governor has not taken any action to challenge or otherwise stop the

propagation of regulations related to K.S.A. 72-6262 or K.S.A. 65-508 to similarly challenge or stop its enforcement by KDHE or school boards.

**89.** The Attorney General has not taken any action to challenge or otherwise stop the propagation of regulations related to K.S.A. 72-6262 or K.S.A. 65-508 to similarly challenge or stop its enforcement by KDHE or school boards.

**WHEREFORE** the plaintiff respectfully asks that the Court grant the relief specified in the Prayer for Relief.

**Count 3:**
**<u>Violation of the Free Speech and Free Press Clauses of the First Amendment of</u>**
**<u>the United States Constitution: Compelled Speech, Unconstitutional</u>**
**<u>Conditions, Unbridled Discretion, and Overbreadth</u>**

**90.** Plaintiffs re-alleges each allegation above as fully set forth.

**91.** The state immunization statutes and the regulation of Blue Valley and KDHE and policies of Blue Valley violate the Due Process Clause of the Fourteenth Amendment both on its face and as applied to Plaintiffs because it deprives students and parents of constitutionally protected liberty and property interests, including the interests of parents in directing and participating in the upbringing and education of their children and the interests of parents and their children in exercising their religious convictions. It also violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution both on its face and as applied to Plaintiffs because it unduly impinges upon the First Amendment liberties of assembly, association, religion, petition and speech made applicable to the State of Kansas and Defendants through the Fourteenth Amendment.

92. The immunization statute, and as interpreted by KDHE and Blue Valley, the religious exemption requires S.F.B. not only to be or become an "adherent" but also in some manner communicate or demonstrate this to his parent.  Implicit in the immunization statutory scheme, as applied by the each defendant, S.F.B. is compelled to create or express a message not of his own choosing.  It is not of his own choosing because S.F.B., at the age of two or four, cannot formulate a message that he is an adherent or even has a religious belief.

93. Even though S.F.B. is silent, and prefers out of necessity to do what he is only able to do regarding this message, he is nevertheless compelled to create a belief and communicate that belief to one of his parents. Thus, the Compelled-Speech Provision requires each plaintiff to engage in an expression that either cannot or do not desire to convey.

94. The First Amendment prohibits the government from compelling persons to expressively associate with others in the process of creating and disseminating speech.

95. Under the requirements of the immunization statute, KDHE, and Blue Valley, it is not sufficient for Terri, a parent of S.F.B. to be an adherent of a religious denomination. Rather, S.F.B. must associate with a particular "religious denomination" in claiming that he is the adherent of that particular religious denomination.

96. Under those respective requirements S.F.B. must associate with not just any religious denomination but one that has religious teachings that are opposed to inoculations or inoculation tests.

**97.** The First Amendment's Free Speech Clause prohibits the government from regulating expression based on guidelines that give officials unbridled discretion to arbitrarily allow some expression and prohibit other expression.

**98.** There is no definition of "adherent" or "religious denomination" under the school immunization statute or in KDHE or Blue Valley policy.  The statute and policy, as applied by KDHE and Blue Valley, coerces an incoherent if not completely false statement from a parent or person acting as parent of a preschool child if "adherent" is defined as believer in or advocate especially of a particular idea or church.  If "adherent" means "member" neither the statutes, KDHE, or Blue Valley explain or define how a preschooler becomes a member of a religious denomination.

**99.** There is no articulation as to whether the minor's purported status as "adherent" is completely dependent on a parent's religious belief or whether the minor's status changes month to month or year to year.

**100.** Under the school and child care immunization statutes, KDHE regulation, and as enforced by Blue Valley, a parent of S.F.B. must declare that S.F.B. is an "adherent of a religious denomination" without defining "adherent" or what has to occur in order to become an "adherent of a religious denomination."

**101.** Under KDHE regulation and the statutory immunization scheme, a minor that is old enough to formulate and express a religious belief that is linked to a religious denomination's teaching, that speech obtains the benefit.  However, for minors not old enough to formulate and express a similar belief, that speech will not obtain any benefit.

**102.** The Governor has not taken any action to challenge or otherwise stop the propagation of regulations related to the immunization statutes or to similarly challenge or stop it's the promulgation of regulations related to religious exemptions under those statutes or in their enforcement by school boards.

**103.** The Attorney General has not taken any action to challenge or otherwise stop the propagation of regulations related to the immunization statutes or to similarly challenge or stop it's the promulgation of regulations related to religious exemptions under those statutes or in their enforcement by school boards.

**WHEREFORE** the plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

### Count 4
### Deprivation of Property, Challenge to Denial of Religious Identity, Personal Dignity, Personal Autonomy, and Personal Liberty

**104.** Plaintiffs re-allege each allegation above as fully set forth.

**105.** S.F.B. has autonomy.  The defendants insist as a condition to receive benefits that S.F.B. give up that autonomy.  They insist that he be vaccinated that could negatively impact his ability to control his own body and the course of his life with adverse effects is protected by the Kansas Bill of Rights which provides natural right constitutional guarantees.  Although the Bill of Rights state that no "person be compelled to attend or support any form of worship" the statutes and regulations compel that result.

**106.** Unless the unconstitutional – and practically impossible – religious exemption statement is made by Terri on behalf of S.F.B., the defendants are arbitrary in their recognition or enforcement of those immunization statutes.  Defendants can now deprive

S.F.B. of a public education without a parent engaging in a nonsensical statement that a four year old is an adherent. S.F.B. is vicariously giving up his constitutional right to not be forced to associate with a religious denomination or his constitutional right to remain silent in exchange for receiving the benefit of not being immunized.

**107.** This constitutes the taking of property and a denial of liberty without due process in violation of the 14th Amendment.

**108.** The Supreme Court's majority opinion in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), and other Supreme Court precedent, dictates that the Fourteenth Amendment protects the liberty of individuals to make choices central to their own dignity and autonomy, including choices that define their personal identity and beliefs.

**109.** The actions of the defendants deny the plaintiff Terri her right to exercise her rights and religion in parenting S.F.B. and denies S.F.B. his liberty right under the Fourteenth Amendment to have his parent provide an exemption statement based on the parent's religious conviction insofar as school enrollment is concerned.  To be required, as a four year old, to formulate or communicate a religious belief, or to associate with a religious denomination when S.F.B. is otherwise not mentally or spiritually able to do so, violates those liberty rights.

**110.** The Fourteenth Amendment, under longstanding case law, also guarantees the right to pursue a life as a child and enjoy the special time in that period of one's life.

**111.** According to Supreme Court precedent, such as *Obergefell*, while a state can have its own views of the ideal ordering of society, when it imposes those beliefs through law with the necessary consequence of putting the imprimatur of the State on excluding people not

holding those beliefs from the pursuit of basic liberties, they demean and stigmatize those individuals in a manner forbidden by the Fourteenth Amendment.

**112.** Under the Supreme Court's precedent, to deny certain people such as S.F.B. the right to be a four year old without being an adherent or someone with the ability to form religious beliefs so as to become an adherent of a religious denomination and its teachings in a way that is consistent with their own concepts of existence and identity is to deny them liberty, disparage their intimate personal choices and identity, and devalue their personhood.

**113.** Because the above cited policies and the Kansas immunization statutes infringe First Amendment free speech rights, it must further a compelling interest in a narrowly tailored way.

**114.** Those regulations and policies and the immunization statutes do not serve any legitimate, rational, substantial, or compelling interest by forcing each of the plaintiffs to violate their respective First Amendment free speech rights.  They do not serve any legitimate interest in a narrowly tailored way.

**115.** The defendants have alternative, less restrictive means to achieve any legitimate interests rather than forcing the plaintiffs do something that S.F.B. is physically and mentally unable to do which results in S.F.B. being forced to abandon his First Amendment free speech right.

**116.** Accordingly, as applied to the plaintiff S.F.B., the Compelled-Speech Provision's requirement that the plaintiff create a religious belief at the age of four years of age, then communicate that belief to a parent, infringes on S.F.B.'s right to refrain from speaking,

and to associate or refrain from associating, as protected by the First and Fourteenth Amendments of the United States Constitution.

**117.** The regulations, policies, as well as the cited statutes, are not facially or operationally neutral or generally applicable and imposes special disabilities on the plaintiff due to his inability to form a religious belief.

**118.** Facially and as applied by the defendants, the aforementioned is not neutral or generally applicable because the defendants enforce it through a system of individualized exemptions under which they assess the reasons for an exemption and grant exemptions for minors able to formulate a religious belief linked to a religious denomination but not for other minors unable to formulate a religious belief.   They are not neutral or generally applicable because they contain categorical exemptions based on minor's ability to become an "adherent of a religious denomination."

**119.** Given the immunization's exemption to minors able to become an adherent of a religious denomination" the defendants have no legitimate basis for refusing to extend a religious exemption to minors such as S.F.B. who have no ability to become an adherent.

**WHEREFORE** the plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

### Count 5
### Violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection

**120.** Plaintiffs re-allege each of the allegations above contained in this Complaint.

**121.** S.F.B. attends preschool at Blue Valley. Under KAR 28-4-590 (d)(3)(A),  in order for S.F.B. to be exempt from vaccinations in a youth or school program, KDHE requires that the "*parent* is an adherent of a religious denomination whose teachings are opposed to

health assessments or immunizations."   So to attend school S.F.B. must be the adherent but to participate in a school program the parent must be the adherent.   Yet Blue Valley in its publications state that a written statement must be signed by a parent or guardian "that the *child* is an adherent of a religious denomination whose religious teachings are opposed to such inoculations."

**122.**   Neither Blue Valley nor the state of Kansas may treat Terri and S.F.B. disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right.

**123.**   Plaintiff S.F.B. is similarly situated to other minors seeking to enroll in public school.

**124.**   Plaintiff Terri is similarly situated to other parents of minors who are seeking to enroll in public schools.

**125.**   The compelled speech required to communicate that a minor is an adherent of a religious denomination who teaches against vaccines and the defendants' enforcement thereof treat Terri's and S.F.B.'s religious speech and religious exercise differently from those similarly situated to them by permitting minors old enough to become an adherent of a religious denomination teaching opposition to vaccines than minors who cannot become an adherent.

**126.**   Defendants' disparate treatment of Terri or S.F.B. is not narrowly tailored to further any legitimate government interest the state defendants may allege.

**127.** The actions of the defendants, coupled with the statutory language and its application, therefore violates S.F.Bs right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

**WHEREFORE** the plaintiffs respectfully ask that the Court grant the relief specified in the Prayer for Relief.

**Count 6**
**Declaratory Judgment**

**128.** Plaintiffs re-allege each allegation above as fully set forth.

**129.** Blue Valley has no authority to require Terri, as the parent of S.F.B., to provide the kind of religious exemption required by Blue Valley.

**130.** The offending religious exemption language cited in the aforementioned statutes cannot be excised from the school enrollment immunization statute without doing violence to the entire statutory scheme.

**131.** Kansas legislative history regarding religious exemptions for immunization in school enrollment is unique.  From the very beginning in 1961 a religious exemption was provided for and has remained.  In 1961 Kansas law makers enacted K.S.A. 72-5381, the predecessor to the current K.S.A. 72-6262.  72-5381 provided that:

> Any pupil entering school for the first time in this state shall, prior to admission, be required to present to the appropriate school authorities certification from a licensed physician . . . that he has received or is in the process of receiving immunization against poliomyelitis, small pox, diphtheria, measles, pertussis, and tetanus, . . . or in the way of alternative to such requirements shall present:
> (a) Certification from a licensed physician stating the physical condition of the child to be such the test and immunization would seriously endanger his life or health, or
> (b) a written statement signed by one parent or guardian that he is an adherent of a religious denomination whose religious teachings are opposed to immunization, or
> (c) a written statement signed by one parent or guardian requesting that the local

> health department give the immunization because the parents or guardians lack the means to pay for such immunization, or
> (d) a written statement signed by one parent or guardian that the parent or guardian does not wish the said child to receive immunizations.

**132.** Four exemptions were provided.  Of those four, there were two parental objections provided for, one of which had the specific religious objection: "(b) a written statement signed by one parent or guardian that he is an adherent of a religious denomination whose religious teachings are opposed to immunization."  Clearly the Kansas legislature did not enact its first school enrollment bill regarding vaccinations without this religious exemption language.

**133.** Further amendments indicate that the religious exemption was integral to the statute.  In 1965, the statute was amended by L. 1965, ch. 412, § 1.  One change was the removal of subsection (d) which provided an exemption if one parent did not wish the child to receive immunizations.  The 1965 amendment did not pass without the religious objection language.  In 1975, after having the statutory number changed, the statute received an amendment L. 1975, ch. 462, § 107, altering the religious objection language in paragraph (b).  Instead of the <u>parent</u> being an adherent, it was changed to the <u>child</u> being an adherent. ("(b) a written statement signed by one parent or guardian that *the child* is an adherent of a religious denomination whose religious teachings are opposed to such tests and immunizations....")  The 1975 legislation was not enacted without this religious exemption language.

**134.** This much is clear: Kansas legislators would not have passed a school enrollment law denying children access to schools without either the parent or the child being an

adherent of a religious denomination whose religious teachings are opposed to immunization.

**135.**   The test of severability in Kansas is "whether the legislature would have eliminated the offending portion of the act, if advised of the infirmity, and would have enacted the measure absent the offending portion."  Under Kansas law  if "the void and valid parts of the statute are so connected with each other in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature, the whole must fall."

**136.**   What has been the fundamental purpose of the school immunization law beginning in 1961?  The answer to that question is two-fold with a balancing of interests. The legislators balanced the health of the child and the religious beliefs of the parent, then the child against denying enrollment to a school for lack of being immunized. The purpose of the legislation was not to require all children to be vaccinated.  Rather, if a child was to attend school, then immunization *might* be required as a condition to enroll in school.  In fact, the legislators were quite content in allowing non-vaccinated children in school for four reasons in 1961.  Those reasons have been reduced or modified but in no case has the religious exemption been eliminated.

**137.**   Since there have been two constants since 1961, perhaps asking the question about whether the school immunization law would have been passed without the health of the child exemption should make the point.  Kansas law makers never passed any version of its law without the opt out provision of whether the immunization "would seriously endanger his life or health."  If the question is "would they" the answer to that question

elicits a "no" for same historical reason – the Kansas legislature never passed any version of the law without that provision. The health and religious exemptions have been equal and twin pillars integral to the school enrollment law since its inception in 1961.

**138.** Thus a court cannot excise part of an unconstitutional statutory provision when the remainder expands the scope of who must be immunized. It alters the purpose, scope or operation of the statute in a way the legislature never intended. Both the medical and religious exemptions are integral and have remained as essentials in the school enrollment law going on 58 years. The religious exemption cannot be severed without doing violence to the balancing of interests and the manner in which the law was designed to operate. It would be unimaginable that after 58 years of demonstrable history, that the Kansas legislature would have originally passed any form of this school enrollment law denying a religious objection by a child or the parent. Moreover, if the Court allows the vaccination requirement to remain, all of the unvaccinated children of whatever age would be required to immediately fulfill the numerous vaccination requirements of numerous injections. Any catchup schedule would be extreme and dangerous.

**139.** K.S.A. 65-508 was enacted in 1923. The immunization language in K.S.A. 65-508 was added in 1992 to establish the same statutory requirements relating to immunization for licensed child care facilities as registered family day care homes.

**140.** This Court should enter a Declaratory Judgment that the Kansas immunization statute violates the Kansas Bill of Rights, the U.S. Constitution, and the RFRA statute, that

S.F.B. should be permitted to attend school unvaccinated and without providing a religious exemption statement at all.

**WHEREFORE** the plaintiff respectfully asks that the Court grant the relief specified in the Prayer for Relief.

### Count 7
### Immediate Injunctive Relief

**141.** Plaintiffs re-allege each allegation above as fully set forth.  In support of his claim for temporary order, preliminary and permanent injunctive relief, the plaintiff alleges as follows:

**142.** The statutes, as interpreted by each of the defendants, threatens to chill constitutionally protected conduct of Terri and S.F.B., especially that protected by the First Amendment.  The actions of the state actor defendants will cause irreparable harm to S.F.B. by requiring his parent to make a nonsensical statement about his religious beliefs.  This denies Terri her parental rights, and the plaintiff's respective rights to freely exercise a religion, or not, without undue burden by the State and such action requires that S.F.B. speak, then associate, and then promote a religious denomination.  The actions of the state defendants deny S.F.B. to his individuality, integrity, his liberty and property rights in a school education without due process, as well as denying him equal protection.

WHEREFORE the plaintiff respectfully asks that the Court grant the relief specified in the Prayer for Relief.

### Count 8
### § 1983 Claims (Constitutional Violations)

**143.** The above paragraphs are fully incorporated herein by reference.

**144.** Section 1983 establishes a civil cause of action for the deprivation of constitutional rights. The defendants have denied the plaintiffs rights guaranteed by the U.S. Constitution as well as federal statute concerning religious discrimination. Blue Valley has infringed upon both S.F.B.'s and Terri's rights to substantive due process and equal protection under the Fourteenth Amendment of the U.S. Constitution by enforcing or arbitrarily enforcing the regulations of KDHE, the school board policies, as well as the Kansas compulsory school attendance statutes with its religious opt-out language and failing to adequately train or supervise employees regarding their obligations regarding religious objections to immunization.

**145.** Section 504 of the Rehabilitation Act has been violated and plaintiffs seek to recover compensatory damages under § 504.  There has been a strong likelihood that pursuit of the defendants' policies will likely result in a violation of federally protected rights.  The above described actions are representative of or attributable to official policies of the Blue Valley School District and local Board of Education. The defendants, while acting under color of state law, deprived the plaintiffs of their respective constitutional rights or caused each to be subjected to the deprivation of those rights in violation of 42 U.S.C. § 1983.

**146.** As described above in this complaint, the defendants deprived each of the plaintiffs' rights to freedom of religion, association, speech, and due process secured by the First and Fourteenth Amendments of the U.S. Constitution, and seeks damages under 42 U.S.C. § 1983.

**147.** Plaintiff S.F.B. has a protected property and liberty interest in his own body. Terri has a relationship interest between herself and her son. That property interest has been deprived by the defendants without due process.

**148.** The Governor has not taken any action to protect or safeguard each of the plaintiff's rights in the State of Kansas immunization legislation.

**149.** The Attorney General has not taken any action to protect or safeguard each of the plaintiff's rights.

**150.** A reasonable person in any of the defendants' positions would have known that the plaintiffs' respective rights as set forth in this Complaint have been and continue to be violated.

**151.** As a direct result of those violations, the plaintiffs have suffered damages for which they are entitled to monetary recovery by way of an award of attorney fees and costs from these defendants.

WHEREFORE the plaintiff respectfully asks in addition that the Court grant the relief specified in the Prayer for Relief

**Count 9 (in the Alternative Condition)**
(**Disabilities Education Act**)

**152.** This Count is brought upon the alternative condition that S.F.B. would be denied enrollment or participation in school based upon his classification as a "susceptible child" either by the actions of the defendants or by any ruling by the Court severing the religious exemption language from the statute but allowing the remaining vaccination requirements to remain.

**153.** The above paragraphs are fully incorporated herein by reference.

**154.** S.F.B. is a child with a disability or an exceptional child as defined in the Disabilities

Education Act (IDEA) (20 U.S.C. § 1400 *et seq* and 34 C.F.R. § 300. 519) and the Special

Education Statutes K.S.A. 72-3403 to 3439 and Regulations of Kansas K.A.R. 91-40-1. Terri

is the "Educational Decision Maker" (EDM) for S.F.B. Blue Valley has not denied S.F.B. a

free appropriate public education but has hindered it and conditioned it upon variations

of unconstitutional religious opt-out language in order for S.F.B. to attend unvaccinated.

**155.** S.F.B. is entitled to access his educational and related services as stated in his IEP

pursuant to the IDEA.  Because of the religious statutory language, unvaccinated students,

as well as S.F.B. with disabilities, cannot access FAPE in the least restrictive environment

to which they are entitled under their IEPs and the IDEA unless the unconstitutional

conditions are met.  Even where children with IEPs cannot attend school because of a

public safety issue where they are medically fragile or have medical exemptions, under

the IDEA districts are still required to provide an education and services pursuant to a

child's IEP. Under the statutes and regulations of the defendants, unvaccinated children

with IDEA rights will overwhelming be deprived of FAPE even if home services were

offered to them, as they need the social and communication benefits of services in a

classroom that is appropriately sized and staffed, social, therapeutic, emotional and other

supports, various therapies including speech therapy, occupational therapy, physical

therapy, and counseling, which may be provided several times a week, by trained

professionals and often in a group setting. Moreover, Kansas parents and the most

affected of children would suffer because no other in-state placements are available to

provide FAPE to these children, whether parents could pay for it or not, and even if reimbursed by the district, because all schools and related institutions in Kansas are barred from accepting unvaccinated students such as the plaintiff who is unvaccinated, has no medical exemption, and is not an adherent of a religious denomination.

**156.** Defendants have violated and continue to violate the plaintiffs' rights under the IDEA, 20 U.S.C. § 1400 et seq., by, inter alia, enforcing the statutes and regulations, which on their face conflict with a student's right to access FAPE in the least restrictive environment under the IDEA. The IDEA contains no requirement that students are fully vaccinated consistent with KDHE's schedule of immunization to attend a daycare, school, or utilize the rights ensured under the IDEA, nor does it give any federally funded entity the option of denying FAPE based on a child's vaccination status.

**157.** Defendants' actions in enforcing those statutes and regulations further conflicts with the IDEA's due process requirements by mandating that school districts and schools must exclude unvaccinated students with no notice, procedural due process, or other protections which districts and schools are mandated to provide under the IDEA.

**158.** Unless the religious exemption is fulfilled, the statutes requires schools and districts, without any discretion, to bar disabled children from school, despite their having Individualized Education Programs ("IEPs") in place and the IDEA's mandate that such children have a right to access their federally protected right to a free and appropriate education ("FAPE"), including educational and related services, in the least restrictive environment. The state cannot condition FAPE on unconstitutional conditions and by not fulling those conditions, unvaccinated children with disabilities are then deprived of FAPE

in the least restrictive environment and meaningful access to educational and related services to meet their individual needs as agreed to by schools/districts and required under the IDEA. Under the IDEA, these children need to be in school with peers and trained professionals and able to socialize and communicate with their peers, teachers and staff in a classroom environment, in order to make progress and prevent regression as is required under IDEA.

**159.** If the statutes are not stricken, and unless a parent fulfills the unconstitutional requirement, they will force families to either move from the state or not obtain the benefits (even homeschooling requires vaccinations in Kansas) which are not even remotely comparable to the requirements of children's IEPs. Such families do not have the money, training, and expertise to effectively provide the specialized educational and related services required by their disabled children – they simply could never even come close to duplicating their children's IEP programs at home. And even if they had the money or were reimbursed by districts, they are barred from enrolling their children in comparable private placements.

**160.** Under the Supremacy Clause of the United States Constitution (Art. VI, Cl. 2), the IDEA, which is a federal law, takes precedence over and preempts these Kansas statutes. As written requiring unconstitutional requirements, they conflict with federal law by denying disabled students the federally mandated benefits of an education and related services as well as notice, due process, and other rights under the IDEA because they provide no exception for children with rights under IDEA and do not recognize the conflict between invasive measures and the IDEA.  Given the scope of federal law

protections under the IDEA and the Supremacy clause, schools should not be permitted to exclude disabled children with IEPs and deprive them of their rights under the IDEA even if they have not received all state mandated vaccinations.

**161.** Pursuant to the IDEA, 20 U.S.C. § 1403(a): a "State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." Under the Supremacy Clause of the United States Constitution (Art. VI, Cl. 2), the IDEA preempts these statutes and regulations which is in direct conflict with Federal law.

WHEREFORE the plaintiffs respectfully ask in the alternative that the Court grant the relief specified in the Prayer for Relief.

**CAUSES OF ACTION**
**(Terri and S.F.B. v KDHE)**
**Counts 10-15**
***

| | |
|---|---|
| **Count 10** | **Violation of the Kansas Bill of Rights** |
| **Count 11** | **Violation of the Free Speech and Free Press Clauses of the First Amendment of the United States Constitution: Compelled Speech, Unconstitutional Conditions, Unbridled Discretion, and Overbreadth** |
| **Count 12** | **Deprivation of Property, Challenge to Denial of Religious Identity, Personal Dignity, Personal Autonomy, and Personal Liberty** |
| **Count 13** | **Violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection** |
| **Count 14** | **Declaratory Judgment** |
| **Count 15** | **Immediate Injunctive Relief** |

**162.** Plaintiffs re-allege each allegation above as fully set forth.

**163.** There is an ongoing violation of federal law for which these plaintiffs seek prospective relief.

**164.** S.F.B. is in the Early Childhood Program of the Blue Valley School District.  S.F.B. is eligible for School-age programs including attendance at a child care facility.

**165.** KDHE classifies S.F.B. as a "susceptible child." Upon that classification S.F.B. is subjected to different standards or requirements as opposed to children not so classified.

**166.** KDHE has inconsistent regulations. Under KDHE regulation K.A.R. 28-4-590 (d)(3)(A), in order for S.F.B. to be religiously exempt from vaccinations KDHE requires that the "*parent* is an adherent of a religious denomination whose teachings are opposed to health assessments or immunizations" even though the statutory requirement is that the child be the adherent. Under KAR 28-4-819(c)(2)(B), it must be stated that "the *child* is an adherent of a religious denomination whose teachings are opposed to immunizations."

**167.** KDHE is responsible for administering Title V of the Social Security Act Maternal and Child Health (MCH) Services Block Grants for the State of Kansas. In this area, KDHE collaborates with schools to improve health, nutrition and fitness of students by administering medication, school screening and entry examinations, and providing health related assistance to school nurses.

**168.** S.F.B., as a special needs student, is the beneficiary of Title V grants regarding such things as developmental screening, health assessments, follow up diagnostic and treatment, and physical exercise. S.F.B. would also be a beneficiary of child care licensing. However, as a condition to receiving these benefits as an unvaccinated child or student, KDHE and Blue Valley require that S.F.B. or his parent be an adherent to a religious denomination. Otherwise, S.F.B. is not allowed to attend school unvaccinated and thereby is deprived of the federal benefits that other similarly situated children are given.

**169.** S.F.B. is a member of the Cherokee Tribe. He is an Indian, as defined in section 4 of the Indian Health Care Improvement Act.   He is eligible for free vaccines under the Vaccines for Children Program (VFC) which is a Title V entitlement program.   KDHE is a coordinator and an awardee of grant money and administrates VFC vaccines in the state of Kansas.   The state must comply with all applicable terms and conditions of award, federal laws, regulations, and policies of the Centers for Disease Control and Prevention.

**170.** Section 508 of Title V states "no person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this title."   KDHE and Blue Valley intentionally discriminate and also have practices that have the effect of discrimination on the basis of religion as to S.F.B. and Terri and have regulations and policies that would exclude S.F.B. from participation in those programs.   KDHE and Blue Valley subject Terri and S.F.B. to discrimination.

**171.** KDHE is the agency that has the legal duty to set out the requirements and conditions of S.F.B.'s immunizations in order to attend public or private school.   KDHE licenses child care facilities in Kansas and sets out requirements for youth programs

**172.** KDHE has promulgated regulations regarding vaccinations and religious exemptions.   K.A.R. 28-4-590, (generally concerning school age youth programs) refers to K.A.R. 28-1-20 and states in part that that children must be vaccinated or have an exemption, including a religious one: "each child or youth attending the program has current immunizations as specified in K.A.R. 28-1-20 or has an exemption for religious or medical reasons…. An exemption from immunization requirements shall be granted if one

of the following is obtained: (A) A written statement, submitted on a form supplied by the department and signed by a parent of the child or youth, that the parent is an adherent of a religious denomination whose teachings are opposed to health assessments or immunizations."

**173.** On KDHE form CCL 358  Rev. 1/2014 (Health History) it states that "each child or youth attending the program has current immunizations as specified in K.A.R. 28-1-20 or has an exemption for religious or medical reasons."

**174.** KDHE provides forms requiring parent or child be an adherent to a religious denomination.  K.A.R. 28-4-590 states that "each operator shall require that each child or youth attending the program has current immunizations as specified in K.A.R. 28-1-20 or has an exemption for religious or medical reasons. An exemption from immunization requirements shall be granted if one of the following is obtained: A written statement, submitted on a form supplied by the department and signed by a parent of the child or youth, that the parent is an adherent of a religious denomination whose teachings are opposed to health assessments or immunizations."

**175.** Terri would like to utilize a school age program, day care or child care facility for S.F.B. as an unvaccinated participant but cannot because of K.A.R. 28-4-590, K.A.R. 28-1-20, and K.S.A. 65-508.  K.S.A. 65-508, which is referred to by KDHE regulations, states that in order for S.F.B. to attend, he is "required to have current such immunizations as the secretary of health and environment considers necessary."  The statute further states that the "person maintaining a child care facility shall maintain a record of each child's immunizations and shall provide to the secretary of health and environment such

information relating thereto, in accordance with rules and regulations of the secretary." The statute exempts S.F.B. if "a written statement signed by a parent or guardian that the parent or guardian is an adherent of a religious denomination whose teachings are opposed to immunizations."

**176.** S.F.B.'s parents are not adherents of a religious denomination. At the same time K.S.A. 65-508 does not apply to S.F.B. pertaining to his preschool operated by Blue Valley which requires that S.F.B. be the "adherent" rather than his parent. Thus S.F.B. is treated differently than other similarly situated students who attend a child care facility not operated by a Kansas educational institution as defined in K.S.A. 74-32,120.

**177.** KDHE classifies S.F.B. as a "susceptible child" pursuant to KAR 28-1-20. The regulation recites that it is "implementing K.S.A. 65-508 and 72-6262." However, the regulation only recites the exemption language of 72-6262 requiring the child to be the adherent which is diametrically different from K.S.A. 65-508 (parent as the adherent).

**178.** It states "for the purposes of this regulation, 'susceptible child' shall mean either of the following if, for that individual, there is no history of the disease that has been documented by a physician, no laboratory documentation of immunity, or no documentation acceptable to the secretary that demonstrates current vaccination against the disease." A "susceptible child" could attend school or a child care facility.

**179.** Being classified as a "susceptible child" KDHE then states that "except as provided in K.S.A.72-6262 and amendments thereto, each susceptible child shall be required to receive the following vaccinations before enrolling in any school:…"

**180.** KDHE requires under its policy and regulation that S.F.B. be vaccinated unless one of the two opt-out exemption statements are made.

**181.** K.S.A. 72-6262 states:

(b)   As an alternative to the certification required under subsection (a), a pupil shall present:
(1)   An annual written statement signed by a licensed physician stating the physical condition of the child to be such that the tests or inoculations would seriously endanger the life or health of the child, or
(2)   a written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations

**182.** Pursuant to KAR 28-1-20 (b), because S.F.B. is enrolled in a preschool operated by a school, the regulation provides one religious opt out – that S.F.B. be an adherent of a religious denomination. Yet the regulation clearly applies to both school operated and non-school operated child care facilities ("any individual who is enrolled, is placed, or resides in a child care facility as defined in K.S.A. 65-503... or a preschool or child care program operated by a school").

**183.** KDHE provides for no religious exemption for vaccinations under K.A.R. 28-1-20 when attending a private day care or child care facility not operated by a school.  The only exemption recited is for S.F.B. to be the adherent under K.S.A. 72-6262 which is substantively different than the religious exemption language contained in K.S.A. 65-508. Thus, under KDHE regulations, either S.F.B. is not provided a religious exemption for private school or licensed daycare, or S.F.B. is required to be an adherent of a religious denomination rather than his parent.

**184.** Either way the KDHE regulations, as well as the statutes, are unconstitutional, arbitrary, and inconsistent facially and as applied.  There is no rational reason, much less

a compelling one, for making a distinction between parent or child based upon religion and then depending on whether the child care facility is operated by a school or someone else.

**185.** In KDHE's publication KANSAS SCHOOL KINDERGARTEN THROUGH GRADE 12 IMMUNIZATION REQUIREMENTS FOR 2019-2020 SCHOOL YEAR it states "Legal alternatives to school vaccination requirements are found in K.S.A. 72-6262."

**186.** Thus, by incorporating the religious exemption stated in K.S.A. 72-6262, insofar as a school operated preschool, and by classifying S.F.B. as a susceptible child, KDHE requires S.F.B. to be immunized as a susceptible child unless he is an adherent of a religious denomination to opt out on religious basis.

**187.** KDHE's regulation requires S.F.B. to be vaccinated to enroll in his preschool unless one of S.F.B.'s parents says that S.F.B., as a four year old, "is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations."

**188.** KDHE requires that religious statement when it refers to K.S.A. 72-6262 and the Blue Valley School board is guided by that statute and KDHE regulations.  Blue Valley or KDHE oversees school nurses and expects school nurses to follow KAR 28-1-20.

**189.** KDHE imposes KAR 28-1-20 by the forms it requires S.F.B.'s school to use.  K.S.A. 72-6264 gives KDHE the discretion and obligation to "prescribe the content of forms" to be used by S.F.M.'s school board:

> Same; duties of secretary; forms and certificates; regulations. The secretary shall prescribe the content of forms and certificates to be used by school boards in carrying out this act and shall provide, without cost to the school boards, sufficient copies of this act for distribution to pupils.  Schools shall utilize the reporting form adopted by the secretary for documentation of all immunizations.  Audit information shall be obtained

from this adopted form.  The secretary may adopt such regulations as are necessary to carry out the provisions of this act.

**190.**  In order to carry out K.S.A. 72-6228 *et seq* (formerly K.S.A. 72-1204) the Blue Valley School Board must provide for religious exemptions under K.S.A. 72-6262.  If KDHE is not providing the content of the forms Blue Valley uses to obtain religious exemptions it is failing to comply with K.S.A. 72-6262.

**191.**  In KDHE's Vaccine Documentation/Consent Form, it provides for a signature of patient, or parent/guardian to consent to immunization.  By providing for the minor child's consent to immunization without parental consent violates Kansas statute as well as the parent's liberty and due process rights to care and nurture her own child.  In that form, it purports to obtain informed consent but fails to inform the reader that there are medical and religious exemptions available.  Without being informed of the exemptions, a child or parent is not being provided necessary information to obtain informed consent.

**192.**  The Kansas Certificate of Immunizations (KCI) form provided by KDHE to schools states the following: "LEGAL ALTERNATIVES TO VACCINATION REQUIREMENTS 'KSA 72-6262'" and states in part the following: "2. 'Written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations.'"  It states the "BLANK VERSION OF KCI FORM is available at http://www.kdheks.gov/immunize/download/KCI_Form.pdf."

**193.**  The form also states that "PARENTS AND/OR GUARDIANS ARE NOT AUTHORIZED TO COMPLETE KCI FORMS" and that a "ROSTER WITH THE NAMES OF ALL EXEMPT STUDENTS SHOULD BE MAINTAINED. PARENTS OR GUARDIANS OF EXEMPT CHILDREN

SHOULD BE INFORMED THAT THEIR CHILDREN SHALL BE EXCLUDED FROM SCHOOL IN THE EVENT OF AN OUTBREAK OR SUSPECTED CASE OF A VACCINE-PREVENTABLE DISEASE."

**194.** As to Homeschooling parents, they cannot complete the form yet it is required. In the form it also provides for a parent or guardian to "give my consent for information contained on this form to be released to the Kansas Immunization Program for the purpose of assessment and reporting." Thus KDHE requires the specific religious language to exempt from vaccinations and keeps a roster of every name including S.F.B. that are medically or religiously exempt from immunizations.

**195.** In a publication titled "Immunization Requirements for the 2019-2020 School Year" KDHE provides a list of vaccinations that are "required" but does not inform the parent or guardian that vaccinations are not required if certain exemptions are met. Thus the publication is incomplete and misinforms the reader as to what is required.

**196.** The form KDHE provides S.F.B.'s preschool requires, in order to religiously exempt out from vaccinations and attend the preschool, that his parent make a statement that he is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations. That violates the Kansas Religious Freedom statute as well as the U.S. Constitution. KDHE's forms directly affect S.F.B.'s right to attend school. The injury to S.F.B. and Terri is that they both are subjected to and coerced by KDHE regarding an unconstitutional condition in exchange for the right to remain unvaccinated and attend school.

**197.** KDHE has a policy regarding preschools not operated by a school under K.S.A. 65-508 and a policy regarding preschools operated by a school under K.S.A. 72-6262.  KDHE policy requires "a written statement signed by one parent or guardian that the parent is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations" if S.F.B. attends that category of preschool.  KDHE has a different policy for S.F.B. to claim the religious exemption when attending a Kansas preschool operated by a school: "a written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations."  Those policies, both of which affect S.F.B., and his parents, are both arbitrary and unconstitutional.

**198.** The requirements and procedures KDHE has created as applied to S.F.B. providing this religious test of S.F.B. being an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations in order to avoid injections into S.F.B.'s body and attend school violates the Kansas Preservation of Religious Freedom Act (KPRFA), Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Kansas Bill of Rights, and the Fourth Amendments of the United States Constitution.  The plaintiff seeks a judgment that KDHE regulations and policies, as well as every Kansas statute that requires a religious objection to be based upon the status as an adherent of a religious denomination violate Section 7 of the Kansas Bill of Rights, violate the equal protection rights of S.F.B. and Terri under the Fourteenth Amendment and that those statutes are unconstitutional in their entirety.

**199.** The claims against KDHE are limited to prospective injunctive and declaratory relief.

**200.** As stated above, KDHE discriminates and disfavors as to which students can participate in public education based upon a certain religious belief and expression.

**201.** The policies of KDHE regarding public attendance and vaccinations are not religion-neutral.

**202.** The regulations and policies of KDHE condition enrollment a child's participation in a youth program or child care facility or school a parent to provide a statement that either she or S.F.B. is an adherent of a religious denomination as a part of participating under a religious exception.

**203.** The regulations and policies of KDHE have substantially burdened the religious freedoms and activities of Terri and S.F.B. of which there is no compelling state interest in requiring S.F.B., a four year old, to become an adherent of a certain kind of religious denomination in order to attend private or public school without vaccinations.

**204.** Requiring Terri or S.F.B. to become an adherent of a certain kind of religious denomination is not the least restrictive means available to the government.

**205.** As between private and public schools, KDHE treats S.F.B. and Terri dissimilar as it can be based upon the parent's adherence to a religious denomination as opposed to a child's adherence.

**206.** The regulations and policies of KDHE violate Due Process both on its face and as applied to Plaintiffs because it deprives children and parents of benefits including

constitutionally protected liberty and property interests and because it unduly impinges upon the First Amendment liberties of assembly, association, religion, petition and speech.

**207.** Terri has a constitutionally protected right to raise S.F.B. according to her own religious views. S.F.B. has a right to free public education. The regulations and policies of KDHE substantially burden and impinge Terri's right to raise S.F.B. according to her spiritual values and similarly thwart S.F.B.'s right to attend a youth program, daycare, or an accredited or non-accredited school.

**208.** The Fourteenth Amendment protects the liberty of individuals to make choices central to their own dignity and autonomy, including choices that define their personal identity and beliefs. The policies of KDHE deny the plaintiff Terri her rights to parent and to exercise her religion and denies S.F.B. his liberty right under the Fourteenth Amendment to have his parent provide an exemption statement based on the parent's religious conviction. Requiring a S.F.B., as a four year old, to formulate or communicate a religious belief to his mother, or to associate with a religious denomination when S.F.B. is otherwise not mentally or spiritually able to do so, in order to enjoy the right to public education constitutes the taking of property and a denial of liberty without due process in violation of the 14th Amendment.

**209.** Plaintiff S.F.B. is similarly situated to other minors in seeking to enroll in school age program, daycare, and preschool.

**210.** Terri is similarly situated to other parents seeking to enroll their child in a school age program, a child care facility, or a preschool.

**211.** Plaintiffs seek a declaratory judgment against KDHE as described in the prayer for relief.

**WHEREFORE** the Plaintiffs seek prospective injunctive relief against KDHE as described in the prayer for relief.

**CAUSES OF ACTION**
**(Terri and S.F.B. v Attorney General)**
**Count 16**

**212.** Plaintiffs re-allege each allegation above as fully set forth.

**213.** There is an ongoing violation of federal law for which these plaintiffs seek prospective relief.

**214.** The Attorney General has not taken any action to challenge or otherwise stop the propagation of policies or regulations related to K.S.A. 72-6262, 72-6267, and K.S.A. 65-508 or to similarly challenge or stop its enforcement by Kansas school boards.

**215.** The statutes violate the Kansas Bill of Rights, Kansas Preservation of Religious Freedom Act, the United States Constitution's Free Speech Clause, Free Press Clause, Free Exercise Clause, Equal Protection Clause, and Due Process Clause facially, and as-applied to S.F.B.

**WHEREFORE** the Plaintiffs seek prospective injunctive relief against the Attorney General as described in the prayer for relief.

**CAUSES OF ACTION**

**(Terri and S.F.B. v Governor)**

**Count 17**

**216.** Plaintiffs re-allege each allegation above as fully set forth.

**217.** There are ongoing violations of federal law for which these plaintiffs seek prospective relief.

**218.** history

**219.** The Governor has not taken any action to challenge or otherwise stop the propagation of policies or regulations related to K.S.A. 72-6262, 72-6267, and K.S.A. 65-508 or to similarly challenge or stop the enforcement of these statutes or regulations by KDHE, DCF, or any other school or school board.

 **WHEREFORE** the Plaintiffs seek prospective injunctive relief against the Governor as described in the prayer for relief.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, plaintiffs respectfully request the following relief:

1. All of the remedies set forth in the K.S.A. 60-5303;

   A preliminary injunction and permanent injunction to:

2. Stay the application and enforcement of K.S.A. 72-6262 and K.S.A. 65-508 and related provisions as it applies to children or in the alternative limited to children with rights under IDEA, including but not limited to those children with current IEPs or those who might have a right to an IEP or other IDEA rights, while this litigation is pending.

3. Enjoin any defendant from enforcing K.A.R. 28-4-590 or K.A.R. 28-1-20 in their entirety or in the alternative stay application limited to children with rights under IDEA, including but not limited to those children with current IEPs or those who might have a right to an IEP or other IDEA rights, while this litigation is pending;

4. Enjoin any defendant from denying S.F.B. access to private or public school enrollment and benefits as an unvaccinated student on the basis that S.F.B. is not an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations in order to obtain the benefit of attending school unvaccinated;

5. Enjoin any defendant from requiring S.F.B. to now formulate a religious belief or to become an adherent of a religious denomination in order to receive the benefits of attending a school unvaccinated;

6. Enjoin any defendant from requiring S.F.B. or his parent to associate with a religious denomination in order for S.F.B. to receive the benefit of attending school unvaccinated;

7. Enjoin Blue Valley from expelling S.F.B. from school based upon lack of compliance with any KDHE regulation regarding immunizations or non-compliance with K.S.A. 72-6262.

A declaration that:

1. S.F.B., as a disabled unvaccinated child with no medical or religious exemptions, may not be denied enrollment and public school participation pursuant to the IDEA.

2. That the religious exemptions contained in K.S.A. 72-6262, 72-6267, and K.S.A. 65-508 violate the U.S. Constitution and the Kansas Bill of Rights and that those exemptions are integral not severable from the remaining portions of those statutes.

3.  Pursuant to 28 U.S.C. §2201, enter a declaratory judgment stating that 72-6262 and K.S.A. 65-508 are unenforceable in their entirety or in the alternative the Court finds the religious exemption language of K.S.A. 72-6262 and K.S.A. 65-508 unenforceable but makes a finding that the language can be excised from those statutes without doing violence to the entire statutory scheme, that those excised statutes are preempted by the IDEA and therefore the excised statutes are unenforceable on that basis and that the defendants must all the plaintiff and all students, including those with IEPs, to attend school irrespective of vaccinations.

4.  That K.S.A. 72-6262, 72-6267, and K.S.A. 65-508 are unconstitutionally vague as to what it means to be "an adherent" and is vague as to the meaning of the phrase "adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations" and that this Court favor an interpretation which renders the religious exemption language constitutional by interpreting it providing an exemption to vaccination mandate when it conflicts with the religious tenets or practices of the parent or the child; in the alternative declare that the religious exemption language cannot be severed and declare those statutes unconstitutional in their entirety.

5.  The actions of all the defendants violate the Kansas Bill of Rights, Kansas Preservation of Religious Freedom Act, the United States Constitution's Free Speech Clause, Free Press Clause, Free Exercise Clause, Equal Protection Clause, and Due Process Clause facially, and as-applied to S.F.B.;

6.  The requirement that a child, rather than a parent or person acting as parent, be an adherent of a religious denomination, violates a parent's right to make

decisions for her child, the Kansas Bill of Rights, the Kansas Preservation of Religious Freedom Act, the United States Constitution's Free Speech Clause, Free Press Clause, Free Exercise Clause, Equal Protection Clause, and Due Process Clause facially, and as-applied to S.F.B.

7. That the there is no compelling interest in the enforcement of those statutes under the test set forth the Kansas or U.S. Constitution or the Kansas Preservation of Religious Freedom Act in burdening the free exercise rights of Terri and S.F.B. or in disfavoring one religion over the other;

8. That K.S.A. 72-6262, 72-6267, and K.S.A. 65-508 substantially burden Terri's and S.F.B.'s right to exercise religion or to have the kind of familial relationship desired.

9. That K.S.A. 72-6262, 72-6267, and K.S.A. 65-508 do not further a compelling state interest.

10. That there are other less restrictive means besides denying unvaccinated children access to a school program, child care facility, or a private or public education to accomplish any compelling governmental interest.

8. In addition the plaintiff seeks an award of compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorney's fees pursuant to the Kansas Preservation of Religious Freedom Act, and 42 U.S.C. § 1988, and in the alternative 20 U.S.C. § 1400, et seq.,, an award of costs, prejudgment and post judgment interest at the highest allowable rate, and such further relief as the Court deems fair and equitable.

**PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas as the place of trial.

Verification

    I am a plaintiff in the present case, individually and on behalf of my child S.F.B., who is a minor, verify under oath and penalty of perjury (28 U.S.C. Sec. 1746) as follows:  I have read the above complaint and its contents in its entirety.  As to those matters which I have personal knowledge, including particularly, those relating to me and my child, the facts stated in the complaint are correct and as to the other matters to the best of my knowledge and recollection those matters are correct.

Executed this day of  15  August, 2019

Terri E. Baker, Plaintiff

                                       By  /s/ Linus L. Baker

                                       Linus L. Baker  KS Bar 18197
                                       6732 West 185th Terrace
                                       Stilwell, KS  66085-8922
                                       Telephone:   913.486.3913
                                       Fax:           913.232.8734
                                       E-Mail: linusbaker@prodigy.net
                                       Attorney for the Plaintiffs