## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **S.F.B.,** a minor, by and through his parent and next friend, **Terri E. Baker** *et al*<br><br>Plaintiffs,<br><br>v.<br><br>**Blue Valley Unified School District, USD 229** *et al*<br><br>Defendants | Case No: 2:19-cv-02480 |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PERMANENT AND PRELIMINARY INJUNCTIVE RELIEF

The plaintiffs have set forth the standards for a permanent and preliminary injunction in their Motion for Permanent and Preliminary Injunction. The following addresses the merits of the plaintiffs' claims regarding compulsory school attendance.

### Success on the Merits

### Kansas Preservation of Religious Freedom Act

(a) Government shall not substantially burden a person's civil right to exercise of religion even if the burden results from a rule of general applicability, unless such government demonstrates, by clear and convincing evidence, that application of the burden to the person:
(1) Is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.
**K.S.A. 60-5303**. No immunity is granted to a defendant and no police power is excluded.

Kansas statutes 72-6262 and 65-508[1] violate the KPRFA. Clearly KPRFA places the highest of views upon religious liberty. The KPRFA only requires a *prima facie* standard to the

---

[1]The statutes do not recognize an independent religious belief that is opposed to vaccinations. That is not enough. Rather, in order for that belief to be recognized as valid, two other conditions must occur: (1) a "religious denomination" must officially teach the doctrine; and (2) the child must be an adherent of that religious denomination.

claimant's initial burden. The Complaint is verified which sets out numerous *prima facie* claims. *See also **Aeroflex Wichita, Inc. v. Filardo**, **294 Kan. 258, 264-65, 275 P.3d 869 (2012)***. (court should view a *prima facie* case from the assertions in the briefing and petition of the plaintiff). *See e.g. **Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal**, **546 U.S. 418, 428 (2006)*** (stating elements of a "*prima facie*" case) This tracks rulings that a claimant's beliefs are accepted and only required to provide notice of that to the government. *See **Mich. Catholic Conference v. Sebelius,** **989 F.Supp.2d 577, No. 13-1247, 2013 WL 6838707 (W.D.Mich. Dec. 27, 2013)*** ("the only thing that the exemption and accommodation framework requires of [applicant] is conduct in which [it] already engage[s]" and eligible organizations need only "attest to [their] religious beliefs and step aside"); *See also **Wheaton College v. Burwell**, **__ U.S. __, 134 S.Ct. 2806 (2014)*** (college not required to follow the notice procedures for accommodation, did not have to submit form prescribed by government and could simply notify the government of its religious objection). This was because it made the Government aware of their view that they "the requirements for exemption from the contraceptive coverage requirement on religious grounds." ***Zubik v. Burwell**, **__ U.S. __, 136 S.Ct. 1557, 1561 (2016)***. Thus if sufficient notice arises from a notification of an objection it follows that there would not be a proof requirement in making a *prima facie* case.

Neutrality and generality of the statutes are issues of the government's defense: government must justify imposing the burden by pointing to a neutral and generally applicable law with clear and convincing evidence. *See **Axson-Flynn v. Johnson**, **356 F.3d 1277, 1294 (10th Cir. 2004)*** (reversing grant of summary judgment for government, remanding for government to establish generality and neutrality); ***Fifth Ave. Presbyterian***

*Church v. City of N.Y.,* **293 F.3d 570, 575 (2d Cir. 2002)** (need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious). Once the claimant makes a *prima facie* case, the burden-shifting process applies as a presumption arises in favor of the claimant. The government bears the burden of persuasion all the way through trial. Government must demonstrate, by clear and convincing evidence, to rebut the presumption or to prevail under the statute. *See* ***In re B.D.-Y.,* 286 Kan. 686, 696-97, 187 P.3d 594 (2008)** (clear and convincing standard is evidence that truth of the fact is highly probable). Under the statutory scheme, the defendant must prove a negative in one regard: that the plaintiff's rights are not burdened as defined by the KPRFA. If not proven, then highly probable evidence justifying each vaccination injection in S.F.B. is the least restrictive means available.

### There is No Compelling State Interest to Vaccinate S.F.B.

The central rationale for a vaccination injection is to maintain a portion of the population immune to a particular contagious disease such that it cannot develop into an epidemic (herd immunity). The plaintiffs desire the benefit of school and FAPE.[2] The Kansas Bill of Rights and the KPRFA change the entire analysis regarding vaccinations in Kansas.  Under federal law, when no fundamental right or suspect class is at issue, a challenged law must pass the rational basis test. *See* ***Reno v. Flores,* 507 U.S. 292, 301 (1993)**. But fundamental rights are at play in this matter under the KPRFA, the Kansas Bill of Rights, and Federal law. The seminal vaccination case of ***Jacobson v. Massachusetts,* 197 U.S. 11 (1905)** referred to the exercise of police power regarding health and safety. Along with the military draft, vaccination was viewed in the early-twentieth century as one

---

[2] Free appropriate public education under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*

of the two most significant intrusions on individual freedom. *Id.* at 29–30.[3] *Jacobson* viewed the power under a rationality review. *Jacobson* never held there was a compelling state interest to vaccinate.[4]

It is more than a narrow possibility for the defendants to disprove, by clear and convincing evidence, that the statutes and policies do not burden the plaintiff's religious beliefs. *See Burwell v. Hobby Lobby Stores, Inc.,* **573 U.S. 682, 134 S.Ct. 2751, 2779 (2014)** ("it is not for us to say that their religious beliefs are mistaken or insubstantial"). *See Yellowbear v. Lampert*, **741 F.3d 48, 54 (10th Cir. 2014)** (when "inquiring into a claimant's sincerity, then, our task is instead a more modest one, limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court — whether he actually holds the beliefs he claims to hold"); *United States v. Seeger*, **380 U.S. 163, 185 (1965)** (question is "whether they are, in his own scheme of things, religious").

### KPRFA'S "Substantial Burden" is Far More Expansive than the Federal RFRA or the Religious Land Use and Institutionalized Persons Act

Although the KPRFA refers to the phrase "substantial burden" it defines it far more broadly than the federal interpretation of the phrase. It defines "**Burden**" to mean "any government action that directly or indirectly constrains, inhibits, curtails or denies the exercise of religion by any person or compels any action contrary to a person's exercise of religion, and includes, but is not limited to, withholding benefits, assessing criminal, civil or

---

[3] Both vaccination and the draft involve an invasion of an individual's bodily integrity. Both involve the use of a person's body to achieve a government purpose which is presented as a service of the common good, but which may not have a direct positive impact on the person involved. In the case of the draft, the governmental purpose is national security and defense. Regarding vaccination, it is the protection of public health and maintenance of herd immunity.

[4] *Jacobson* did not deal with a Free Exercise Clause or Establishment Clause challenge to a vaccination requirement, and it was also decided before the First Amendment was held to apply to the states.

administrative penalties, or exclusion from government programs or access to government facilities."[5]  K.S.A. 60-5302 defines "**Exercise of religion**" as "the practice or observance of religion under section 7 of the bill of rights of the constitution of the state of Kansas and the free exercise clause of the first amendment to the constitution of the United States and includes the right to act or refuse to act in a manner substantially motivated by a sincerely-held religious tenet or belief, whether or not the exercise is compulsory or a central part or requirement of the person's religious tenets or beliefs."

Every word in the KPRFA must be given effect.  The definitions of burden and religion are far more expansive compared to other state RFRAs, the federal RFRA, or the Religious Land Use and Institutionalized Persons Act.  *Compare **Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston,** 250 F.Supp.2d 961, 993-94 (N.D.Ill.2003)* (substantial burden under RLUIPA is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise – including the use of real property for the purposes therefore within the regulated jurisdiction generally – effectively impracticable"); *Midrash Sephardi, Inc. v. Town of Surfside*, **366 F.3d 1214, 1227 (11th Cir. 2004)** (substantial burden is one that "places more than an inconvenience on religious exercise" and is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly").  Those definitions are far more restrictive than the way the KPRFA defines "burden" and "free exercise of religion." The KPRFA does not require that there be a "significant pressure," that it "directly coerce," or that the end result makes the practice of religion "impractical."  Instead, the KPRFA uses

---

[5] The statute defines burden in such a manner that any burden cannot be characterized as trivial or technical which distinguishes it from federal case law analysis.

language that states "***directly or indirectly constrains,[6], curtails, or denies***." *See* **K.S.A. 60-5302(a)** (definition of "burden" also includes "*compels* any action *contrary* to a person's exercise of religion"). Read together, the KPRFA's defined "burden" encompasses: (1) compelling, by any means, for Terri to act contrary to her exercise of religion; or (2) anything the government does, directly or by collateral effect, to make her exercise of religion not as easy, troublesome, or arduous. Those four words are highly nuanced and are not superfluous. There are no adjectives modifying those words. For example, there is no requirement that the government "substantially inhibit." This language of the KPRFA is anything but a mirror image of RFRA or RLUIPA. Cases referring to a federally defined "substantial burden" are therefore limited as to the interpretation of the KPRFA.

As to state versions, the KPRFA is also different than any other state RFRA. For example, the Illinois Religious Freedom Restoration Act (775 Ill. Comp. Stat. Ann. 35/1 to 35/99) has no clear and convincing evidence requirement, and does not define "burden" or religion in the expansive manner as KPRFA. Even the Kentucky and Indiana RFRA statutes define burden and religion less expansively. Compare Ind. Code § 34-13-9 and KRS § 446.350. As such cases interpreting other state RFRAs are not persuasive for those reasons. The specific way the KPRFA defines burden and religion clearly encompass indirect or incidental effects which is far more comprehensive than any federal or state definition of "substantial burden." It applies to incidental burdens.

As to the KPRFA, it would be as to "the particular claimant whose sincere exercise of religion is being substantially burdened" ***Gonzales v. O Centro Espirita at* 439**; ***Burwell v.***

---

[6] (*definitions from Online Etymology Dictionary*): Constrain: To exert force, physical or moral, upon, either in urging to action or restraining from it. Inhibit: to consciously or unconsciously suppress or restrain (psychologically or sociologically) unacceptable behavior. Curtail: restrict or limit. Deny: declare to be untrue or untenable.

*Hobby Lobby Stores, Inc.,* **134 S. Ct. 2751, 2779 (2014)** (application of the challenged law "to the person"). Defendants may argue the take-one-for-the-team herd immunization theory requires S.F.B.'s participation and that allowing S.F.B. to be exempted would result in a floodgate of exemptions, thus undermining the herd immunization concept.  Yet, federal case law on RFRA instructs that the government may not rely on slippery slope arguments in its effort to make out a compelling interest in enforcing the law against a RFRA claimant.  *See* *Yellowbear at* **62** ("If I make an exception for you, I'll have to make one for everybody, so no exceptions" (quoting *O Centro***, 546 U.S. at 435–37**)).  Defendants must also show, by clear and convincing evidence under the KPRFA, a compelling interest in the particular case at hand, as applied to S.F.B., and not a compelling interest in general.  *See* **K.S.A. 60-5304**; *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.,* **584 F. Supp. 2d 766, 788 (D.Md. 2008)** ("compelling interest is not a general interest but must be particular to a specific case").  Thus, the defendants are burdened with demonstrating, by clear and convincing evidence, that there is a compelling state interest to specifically vaccinate S.F.B. – and then by the same demanding evidentiary standard why ***each*** vaccination injection into S.F.B. is the least restrictive means.[7] K.S.A. 60-5304 states the *Wisconsin v. Yoder***, 406 U.S. 205, 215 (1972)** standard ("only those interests of the highest order") requiring evidence that each repeated injection into S.F.B. is of the highest order.  To whatever extent a "rational basis standard" was applicable to vaccinations, the

---

[7] To show a KPRFA claim, a claimant need not demonstrate that the challenged law or policy singles out any particular group for special harm – that such a law would be unconstitutional under the Free Exercise and Establishment Clauses of the First Amendment as it would make a RFRA claim unnecessary. *See* *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah***, 508 U.S. 520, 534 (1993)**. The KPRFA is not a means of challenging the application of a law or policy generally, but of challenging a particular enforcement of the law applicable to a person's religion.

Kansas Bill of Rights and KPRFA overlays the strict scrutiny standard.  All of the case law justifying vaccinations was based upon state police power and a rational basis review of that power. *See **Boone v. Boozman**, **217 F. Supp. 2d 938, 954 (E. D. Ark. 2002)*** (vaccinations "permissible exercise of the State's police power"). *See **Leebaert v. Harrington**, **332 F.3d 134, 143-44 (2d Cir.2003)*** (parent's religious objection to mandatory health education subject to rational basis review); ***Douglas County v. Anaya**, **269 Neb. 552, 694 N.W.2d 601, 605-06 (2005)*** (parent's objection to metabolic testing of infant did not implicate strict scrutiny under ***Smith***); ***Boone v. Boozman* at 955 n. 38** (noting immunization of children is not be subject to compelling interest test citing ***Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872 (1990)***).

The fact that a compelling interests test has not been applied to vaccinations was specifically acknowledged by Judge Scalia in ***Employment Div., Dept. of Human Resources of Ore. v. Smith,*** where writing for the majority, stated "if the 'compelling interest' test is to be applied at all, then, it must be applied across the board, to all actions thought to be religiously commanded" and that "many laws will not meet the test." ***Id.* at 888**.  *See **City of Boerne v. Flores**, **521 U.S. 507, 534 (1997)*** ("Laws valid under ***Smith*** would fall under RFRA without regard to whether they had the object of stifling or punishing free exercise. We make these observations not to reargue the position of the majority in ***Smith*** but to illustrate the substantive alteration of its holding attempted by RFRA"). Judge Scalia reasoned in ***Smith*** strict scrutiny would include "compulsory vaccination laws." ***Smith* at 888**.  Judge Scalia cited the mandatory vaccination law of Arkansas and the case of ***Cude v. State**, **237 Ark. 927, 377 S. W. 2d 816 (1964)***.  ***Id* at 889** ("According to the great weight of authority, it is within the police power of the State to require that school children be

vaccinated against smallpox"). The *Cude* court, in examining the Arkansas scheme, did not utilize a compelling interest test to justify vaccinations under the police power doctrine.  So the rational basis review and the *Smith* test do not apply.  The KPRFA essentially makes federal precedence interpreting the First Amendment or "substantial burden" largely irrelevant to the extent it tracks *Smith*.  *Jacobson* also did not encounter the broad protections granted in Kansas Bill of Rights or a statutory RFRA such as the Kansas version. It overlays across the board a strict scrutiny / compelling interest test which *Jacobson* did not address.  The statutory scheme regarding vaccinations demonstrates no compelling interest as it excludes large portions of the general population.  *See Church of the Lukumi Babalu Aye, Inc. at* **547** (stating that a law cannot be regarded as protecting an interest "of the highest order" when it leaves appreciable damage to [the] supposedly vital interest unprohibited").

There is no compelling interest to vaccinate S.F.B. when the vast majority of the Kansas population is excluded and exemptions for the targeted class of students (albeit an illusory one for religion) for these vaccinations now exist.  In *Burwell v. Hobby Lobby Stores, Inc.,* **134 S. Ct. 275 (2014)** the Obamacare's preventive medicine regulations were so underinclusive that the government interests were not compelling.  *Hobby Lobby* concluded that the "exemption for the millions of individuals" from the HRSA Mandate undermines the governments alleged compelling interests. The Kansas statutory scheme is not only underinclusive of all Kansas citizens; it is underinclusive of all children, then underinclusive of all students.  Citizens of all ages are not required to be vaccinated.  No infants are required to be vaccinated.  Children that are not vaccinated are not subject to the compulsory school statute. As to students, vaccinations do not apply to college

students.  Of other students that it does apply not all are treated the same.  Home schooled children are required to be vaccinated but there is no policing mechanism.  Medical exempt students are also exempted.  A class of religious objectors is also exempted.  As a fact, Kansas never required vaccinations at all and only did so as a condition to attend school in 1961.  There is no compelling state interest in requiring S.F.B. to be vaccinated and even if there was a least restricted means test would not require his vaccination as a condition for school participation.

### Controlling One's Own Body | Bodily Integrity | Self-Determination

The Kansas statutory scheme leverages the forfeiture of S.F.B.'s bodily integrity for participation in public or private school.  The physical intrusion beneath S.F.B.'s skin and into his muscle some 24 times over years as a condition for obtaining school benefits is not risk free and clearly an invasion of bodily integrity which implicates an individual's "most personal and deep-rooted expectations of privacy." **Winston v. Lee, 470 U.S. 753, 760 (1985)**. *See* **Rochin v. California, 342 U.S. 165, 172 (1952)** (forcibly pumping a suspect's stomach to recover swallowed evidence); **Washington v. Harper, 494 U.S. 210, 221-22 (1990)** (prisoner and unwanted antipsychotic medication); **Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 279 (1990)** (right to refuse life-saving medical treatment). The right of a person to be un-injected over and over with different vaccines which each carry varying risks sits at the intersection of several constitutional mandates.  In this case it involves a healthy unvaccinated four year old in conjunction with mandatory school attendance.  To be sure, this case involves the interplay and intersection of multiple and related constitutional issues regarding the right to education under the Kansas statutory scheme, religious burden, equal protection, discrimination against religion, and parental

10

liberty interest rights. *See* ***Obergefell v. Hodges*, 135 S. Ct. 2584 (2015)**.  These rights are intertwined which "leads to a stronger understanding of the other."  ***Id.* at 2603**.  The right of S.F.B. not to be immunized parallels cases about the right to self-determination and autonomy such as forced medical treatment and the right to die. S.F.B.'s personal right to not be immunized is fundamental and is entitled to full protection under the Kansas Bill of Rights, the Due Process Clause of the Fourteenth Amendment.  Being repeatedly injected with foreign substances (risks with no guarantees) as a condition to obtain the benefits of a free public education fits within these contours.  These principles are recognized in Kansas.

In ***Harrison v. Tauheed*, 44 Kan. App. 2d 235, 235 P.3d 547 (2010)**, that court implicitly characterized the refusal to vaccinate as an exercise in a "constitutionally protected right."  ***Id.* at 555**.  The ***Tauheed*** court examined three cases, ***Jackson v. Jackson*, 181 Kan. 1, 309 P.2d 705 (1957)**, ***Beebe v. Chavez*, 226 Kan. 591, 602 P.2d 1279 (1979)**, and ***Anhalt v. Fesler*, 6 Kan.App.2d 921, 636 P.2d 224 (1981)**.  ***Harrison* at 554**. In ***Beebe***, the court reviewed child custody between a mother described as a "non-sectarian religious sermonizer" who did not believe in medical treatment or immunizations. ***Harrison* at 555**.  Noteworthy in ***Beebe*** is the recognition that the parent's refusal for her child's "medications," which included vaccinations, (and characterized as "unorthodox") was nevertheless "constitutionally protected."  The ***Harrison*** court reiterated this holding: "***Jackson***, ***Beebe***, and ***Anhalt*** demonstrate Kansas appellate courts' reluctance to deprive a parent of one constitutionally protected right – the care, custody, and control of children – based on the parent's exercise of another constitutionally protected right – the free exercise of religion." In a very recent Kansas Supreme court case, ***Hodes & Nauser, MDS, P.A. v. Schmidt*, 440 P.3d 461 (Kan. 2019)**, it held that Kansas Constitution protects the

right to an abortion and in doing so interpreted Section 1 of the Kansas Constitution Bill of Rights to include "the right of personal autonomy, which includes the ability to control one's own body, to assert bodily integrity, and to exercise self-determination." ***Hodes*** further stated "so when the State attempts to use its *police power* to unconstitutionally encroach on these inalienable rights, we have an obligation to ensure it does not." (*Emphasis added*).  The State could not force students to give blood under the theory that the blood would help other students.  The state could not make taking vitamins, being tattooed or not, or have a certain weight as a condition to education.  Yet, according to the Kansas legislature, it can require multiple injections of foreign substances over a prolonged period of time under a do-it-for-the-team reason while using the auspice of police power as a condition for S.F.B. to receive an education.  There is no meaningful distinction between a woman's bodily autonomy or her right to control her own body and a four year old boy's right to do so.  This fits within the ***Hodes'*** categories regarding police power and bodily integrity.

### The Kansas Vaccination Scheme is Not Neutral

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." ***Larson v. Valente*, 456 U.S. 228, 244 (1982)**.  S.F.B.'s right to attend school and his right not to be immunized in order to attend school is also a right afforded under Kansas state law which is a property interest in education protected by the Fourteenth Amendment.  There is a Federal right under the IDEA as to special needs children.  The state of Kansas confers the benefit of school to unvaccinated students who identify as adherents of a religious denomination.  All other kinds of believers are denied. When a state denies benefits based on the religious identity

of the unvaccinated child this violates the Free Exercise Clause. *See e.g.* ***Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. \_\_, 137 S. Ct. 2012 (2017)**.  A state's denial of "a generally available benefit solely on account of religious identity" violates the Free Exercise Clause unless "justified... by a state interest of the highest order." ***Id.* at 2019**; ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 718 (1981)** ("When the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by a religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his religious beliefs, a burden upon religion exists"). The Supreme Court has historically declared that a Hobson's choice, like the one forced upon S.F.B. and his parent, is a substantial burden on the exercise of religion. *See **Thomas**, **450 U.S. at 716*** ("More than 30 years ago, the Court held that a person may not be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available public program."). And that principle remains in full force today. *See **Trinity Lutheran Church*** (finding a burden on religion under the Free Exercise clause where a state statute required a church to choose between "participat[ing] in an otherwise available benefit program or remain[ing] a religious institution").

The Supreme Court has since underscored a state's constitutional duty against even "subtle departures from neutrality on matters of religion." ***Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018).** "The Constitution commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and to the rights it

secures." ***Id.***   The Kansas state school enrollment statutes clearly regard religion and a particular type. The First Amendment forbids an official purpose to disapprove of a particular religion or of a religion in general.   *See **Church of the Lukumi Babalu Aye, Inc.; Thomas, 450 U.S.* 707** (subjecting religious belief to an evaluation process of the relative importance of the religious tenets is itself inimical to the First Amendment).   "If the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." ***Church of the Lukumi Babalu Aye at* 533.** And "facial neutrality is not determinative." ***Id. at* 534**.

The classification in these statutes between what religious beliefs count is a facial hostility to the disfavored religious belief. The school enrollment scheme originates in independent individual-believer prejudice. **The scheme disparages Terri's religion as unorthodox and relegates it to mere rhetoric**.   *Masterpiece* **at 1721** ("disparaged Phillips' faith as despicable and characterized it as merely rhetorical…); ***Id.* at 1731** ("no official, high or petty, can prescribe what shall be orthodox in…religion").   Thus the Kansas school enrollment statutes, combined with Blue Valley's and KDHE's policies and regulations which do not provide for deviations from K.S.A. 72-6262 religious viewpoint favoring beliefs associated with religious denominations while not recognizing the same beliefs in others not so associated, "violated the state's duty under the First Amendment not to base laws or regulations on hostility to a religion or religious viewpoint." ***Trump v. Hawaii*, 138 S. Ct. 2392, 2417 (2018)**.

### Facial Challenge

K.S.A. 65-508 and K.S.A. 72-6262 have an archaic religious gatekeeping function as between religious beliefs that are recognized.   And there is nothing in those statutes that

limits discretion as to verifying or testing the religious statement. The statutes are more than pretty clear on the religious-denomination-adherent statement requirement. This Court should not add or subtract language from those statutes. *See **Ullery v. Othick**, **304 Kan. 405, 409, 372 P.3d 1135 (2016).** Although it purports to provide a religious exemption, in practicality K.S.A. 72-6262 does not provide for a religious exemption for S.F.B. In order to qualify, a student, irrespective of age or mental capacity, must be "an adherent of a religious denomination whose teachings are opposed...." The irrational statutory scheme[8] lumps all public school students together, irrespective of their age or maturity, as to whether the student is an adherent of a religious denomination. Thus, by practical application, the statute does not provide a religious exemption for preschool students such as S.F.B. as they are incapable of meeting the "adherent" status. And for other special needs students, irrespective of age, who also may not possess the mental wherewithal to do so, these students are denied the exemption. There is no rational reason to deny the parents of a four year old child or a special needs student a religious exemption while older mature unvaccinated students are provided a religious exemption. This is why a religious exemption, in order to be fair, must provide for a parental religious objection.

The school enrollment scheme requires an association with and an endorsement of a particular religion. Terri and S.F.B. have a general right to freedom of expression as it applies to their words and conduct (S.F.B. being unvaccinated). *See **W.Va. State Board of Educ. v. Barnette**, **319 U.S. 624 (1943)** (either communicate the state's message or be expelled from school). Terri is required to endorse by words one religion in her religion

---

[8] The scheme is also irrational because it sets out two different criteria for the same preschool student depending on whether the student attends a private preschool (65-508 *parent* is the adherent) versus the public preschool (72-6262 *student* is the adherent).

statement in order to avoid S.F.B. from being denied enrollment. As to conduct, not vaccinating S.F.B. is capable of communicating one's religion or heritage to doctors, government, Blue Valley nurses, as well as others including teachers. The unvaccinated status of S.F.B. communicates Terri's religious faith and her holistic heritage; and others such as KDHE (requires a roster of unvaccinated students) are aware of the unvaccinated status and why understand it as an expression of such.  Related to the above, K.S.A. 72-6262 clearly offends the parental relationship in not recognizing a parent's religious beliefs, particularly regarding a minor too immature to formulate his own.  In Kansas parents have a constitutional right to make the basic decisions involved in raising children. *See Harrison v. Tauheed*, **292 Kan. 663, 678-79, 256 P.3d 851 (2011).**  To provide for a child-based-belief exemption but none for a similar parent-based belief burdens the mother's rights to parent her child and S.F.B.'s right to have parental oversight.  This is particularly true where the state provides for an illusory and irrational religious exemption for children such as four year old special needs student S.F.B. who cannot attain the status of "adherent of a religious denomination." Thus the statute discriminates against the disabled in denying a benefit of a religious opt-out provided to the non-disabled.  "State officials who rely on their compliance with discriminatory state laws as evidence of their reasonableness will normally find themselves proving their own liability, not shielding themselves from it." ***Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1234 (10th Cir. 2009)**.  There is a burden to the plaintiffs in exercising a parental determination regarding vaccinations (versus it based upon a child's purported "adherence").  Terri has a fundamental right to make a religious objection based upon her personal beliefs and her child's participation in school should not disregard that or solely depend on a four year old's religious status.

16

There is a burden that the plaintiffs are placed in a Hobson's choice of choosing between education and the unconstitutional conditions placed upon them in order for S.F.B. to attend school unvaccinated.  Parental childrearing right is a fundamental right. *See **Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925)**. And the childrearing issue here pertains to the exercise of religion and autonomy, which are fundamental rights. *See **Cantwell v. State of Conn.*, 310 U.S. 296, 303 (1940)**; ***Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1202 (10th Cir. 2003)** (parents of children in a Head Start program alleged that their children were subjected to intrusive physical examinations on school property without the parents' notice or consent. The parents claimed a violation of their fundamental rights to privacy and to the care and custody of their children).  There is no compelling governmental interest in refusing to recognize the parent's religious beliefs and instead the child's purported "adherence" or the adherent-of-a-religious-denomination conditions. There are less restrictive means assuming there is some compelling governmental interest in making distinctions among religions or in refusing to recognize a parent's right to refuse vaccinations based upon her own beliefs as opposed to those of a four year old child. "The least-restrictive-means standard is exceptionally demanding." ***Burwell v. Hobby Lobby Stores, at* 2780**.

A person need not be a member of a formal religious sect or church to have religious beliefs that are recognized by government. *See **Sherr v. Northport-East Northport Union Free School Dist.*, 672 F.Supp. 81, 91 (E.D.N.Y. 1987)**.[9]  In trying to limit exemptions to vaccinations it is not constitutional to do so in a way that favors certain religious

---

[9] That court analyzed a New York statute that stated "This section shall not apply to children whose parent, parents, or guardian[s] are bona fide members of a recognized religious organization whose teachings are contrary to the practices herein required…"

denominations: the religious exemption must incorporate all forms of religious belief irrespective of a denomination's adoption of the belief.   Yet K.S.A. 72-6262 does not recognize this core truth. There are no set of circumstances in which the Kansas religious adherent exemption language under K.S.A. 72-6262 or K.S.A. 65-508 could be validly applied.[10]   It takes a relative short analysis to see that the religious-denomination-exemption contained in both statutes violate the Kansas Preservation of Religious Freedom Act and is unconstitutional under both the Kansas Bill of Rights and the U.S. Constitution in that it favors a particular religion (and conversely disfavors others).   It denies equal protection to those similarly situated who hold the same religious beliefs but are not "adherents of a religious denomination."

And if the Court severs all religious exemptions but allows the vaccination mandate, the state would still be burdened with showing vaccinations with no exemptions was the least restrictive means.   Kansas has never required every citizen to be vaccinated – only certain categories of students.   As to the justification of "herd immunity" it refers to the idea that when a particular threshold proportion of individuals in a population is immune from a disease, a decline in the incidence of infection should result. This phenomenon purportedly occurs because enough members of the population are immune from the

---

[10] As stated in the Complaint, the religious exemption language cannot be severed for several reasons.  Kansas legislators never passed any version of K.S.A. 72-6262 without a religious exemption. To sever the exemption would expand the scope of the vaccination requirement.  *See e.g.* ***State, ex rel., v. Consumers Warehouse Market*, 185 Kan. 363, 343 P.2d 234 (1959)** (concerning the severability of an exemption of feed and grain dealers from unfair practices act (selling below cost) which could not be severed because "to eliminate the objectionable exemption would change the scope of the Act and make it applicable to grain and feed dealers, whereas the legislature expressly declared they are not to be included." Similarly, the Kansas legislature has always intended a religious objector to be exempt from vaccination and to eliminate the exemption would expand the scope of required immunizations to include religious objectors.

disease, such that no sustained chains of transmission can be established.  In theory, this protects the entire population, even those who are unvaccinated. Thus one hundred percent vaccination of a population is unnecessary.  The mandatory vaccination of S.F.B. is therefore not the least restrictive means of ensuring public health and safety.   "The Establishment Clause prohibits government from making adherence to a religion relevant in any way to a person's standing in the political community." *Lynch v. Donnelly*, **465 U.S. 668, 687 (1984)**.  But the Kansas school enrollment statute does precisely that.  K.S.A. 72-6262 is not content neutral when it comes to the religious exemption language.  It openly and facially prefers one religion.  It religiously gerrymanders among religious objections. *See* *Walz v. Tax Comm'n of New York City*, **397 US 664, 696 (1970)** ("The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders"). Within the exemption, it targets religious conduct for distinctive treatment.  Then the statute forces a parent to speak but only in regards to someone else's beliefs.  It requires a written statement from the parent but not all statements are treated equally. It also constitutes viewpoint discrimination as only those children who are adherents of a particular religious denomination may receive government benefits while children with the same religious beliefs but not adherents are denied. The statute refuses to qualify S.F.B. for public school benefits while providing them to other unvaccinated students who possess a different religious viewpoint.   Kansas' mandatory school enrollment scheme relegates all religious beliefs to second class status save for those who are adherents.  It demeans (if not altogether is hostile to) Terri's religious beliefs as it relegates any belief not officially held by a state recognized religion ("religious denomination") to being inconsequential.  The statute passes judgment on all religious

objections to vaccinations and favors just one.  This is impermissible.  *See **Masterpiece Cakeshop, at** 1731* ("Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practice").

The scheme collapses under scrutiny because it authorizes the practice of bias, as well as arbitrary and discriminatory preference for one religion over another. *See **Rosenberger v. Rector & Visitors of Univ. of Va.,** 515 U.S. 819, 825 (1995)*; ***Pahls v. Thomas**, 718 F.3d 1210, 1229 (10th Cir. 2013)* ("Viewpoint discrimination is a subset— and a particularly 'egregious form' – of content discrimination…. Both content- and viewpoint-based speech restrictions are presumptively invalid").

### Religious Police | Excessive Entanglement

For a school board to interpret the religious exemption requires excessive entanglement in violation of the Establishment Clause.  The Supreme Court has consistently struck down laws consigning First Amendment-protected activities "to the whim of the administrator." ***Forsyth Cty., Ga. v. Nationalist Movement**, 505 U.S. 123, 133, (1992)*. "The First Amendment prohibits the vesting of such unbridled discretion in a government official." ***Id.***; *see also **City of Lakewood v. Plain Dealer Pub. Co.,** 486 U.S. 750, 757 (1988)* (listing a "long line of precedent" outlining the Supreme Court's skepticism in "placing unbridled discretion in the hands of a government official or agency"). Under the statutory and School District scheme, someone, namely a school nurse, has the discretion to police and evaluate church doctrine and religious beliefs.  This makes Kansas school nurses operate as religious police.

*See* https://www.kansascity.com/news/local/article177411636.html; *See also* Wichita School system board policy ("The school reserves the right to require verification by the clergy of the religious tenets that preclude immunizations").  In a story written in 2011 regarding the Wichita school system and vaccinations, it was admitted by Kathy Hubka, the then Coordinator of Health Services for the Wichita School district, that the school nurses were conducting religious inquisitions: "school nurses have found instances where parents sign a religious exemption for philosophical or political reasons" and "School nurses are questioning more, checking with the minister or requiring verification."[11] Kansas CINC judges are also engaging in similar religious inquisitions questioning the parent's religious beliefs regarding vaccinations. As a matter of law, one is not permitted to challenge whether Plaintiffs' beliefs or practices is an approved feature of an established religion. *See United States v. Ballard*, **322 U.S. 78, 86-87 (1944)** ("They may not be put to the proof of their religious doctrines or beliefs").

The use of the word "adherent" conjures up a heightened level of religiosity as to vaccinations. The statute does not prohibit a Blue Valley nurse from verifying an individual's beliefs and the doctrines or dogma espoused by a religious denomination.  One would have to somehow factor religious affiliation, religious activity, and religious beliefs in determining one's status as an "adherent." The phrase "adherent of a religious denomination whose teachings…" clearly imposes a kind of religious affiliation of the individual to a religious denomination[12]. Given that Blue Valley determines compliance,

---

[11] https://www.kansas.com/news/local/article1081858.html

[12] To be clear, the statute does not provide that the student be an adherent of a teaching (one that happens to be held by a religious denomination).  Rather, the student must be an adherent of the religious denomination.  Thus a student could say he is an adherent of a

which the KDHE avows it does, the Blue Valley school board and nurses could attempt to "verify" the student's status as an "adherent" and to the purported teachings of that denomination.  The language would also give them the discretion to review and interpret church law, policies, or practices in the determination of whether the church has teachings that oppose vaccinations.  This is barred by the First Amendment under the entanglement doctrine. *See Serbian E. Orthodox Diocese v. Milivojevich*, **426 U.S. 696, 709-10 (1976); *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979)** ("It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.") A school board, as evidence by Wichita's, would be tasked with ascertaining whether S.F.B. meets the status of "adherent" and then verify the denomination's purported teachings. *See Colorado Christian University v. Weaver,* **534 F.3d 1245, 1263 (10th Cir.2008)** ("Asking whether a university's educational policy on a given issue has 'the image or likeness of a particular religion' is thus unconstitutional").

In utilizing the word "adherent" this creates an uncertainty of religious proportions as to what it means.[13]  And just what is an "adherent" and according to whose religion?  The word does not set out adequate standards to determine and even so raises the specter of a religious inquisition to determine the level of religious belief. *See Colorado Christian*

---

teaching  that opposes vaccination but that would not be enough without adherence to a religious denomination who also holds the same belief.

[13] The word is traced etymologically to the fifteenth century usage from Old French or directly from the Latin.  See ONLINE ETYMOLOGY DICTIONARY https://www.etymonline.com/word/adherent#etymonline_v_44108 (last visited August 5, 2019) ("early 15c., 'follower, supporter, one who upholds (a leader, cause, etc.),' from Old French adherent or directly from Latin adhaerentem (nominative adhaerens), present participle of adhaerere 'stick to,' from ad 'to' (see ad-) + haerere 'to stick' (see hesitation). Meaning 'adhesive substance' is from 1912").

*University v. Weaver* (discrimination among religions requires strict scrutiny)[14] *See also*

*West v. Derby Unified Sch. Dist. No. 260*, 23 F. Supp. 2d 1223, 1235 (D. Kan. 1998)

(statute or government regulation declared void if it fails to set out adequate standards to

prevent arbitrary and discriminatory enforcement.) The fact that S.F.B. is now attending

Blue Valley without a K.S.A. 72-6262 statement of "adherent to a religious denomination" is

evidence of the arbitrary interpretation and enforcement.  The state of Kansas may not

deny benefits using classifications of religious beliefs and that based upon vague religious

terminology.  There is nothing in K.S.A. 72-6262 or any Board of Education policy that

prevents school nurses from being the religious police.  *See* *Forsyth Cty*, 505 U.S. at 133

n.10 ("The success of a facial challenge on the grounds that an ordinance delegates overly

broad discretion to the decision maker rests not on whether the administrator has

exercised his discretion in a content-based manner, but whether there is anything in the

ordinance preventing him from doing so").

Blue Valley may claim that all is well and it will not expel S.F.B. over lack of the

specific religious objection required under statute.  The Blue Valley School District has no

discretion or authority to disregard or otherwise modify the school enrollment statutes and

the vaccination requirements of KDHE as stated in K.S.A. 72-6262 under Kansas state law.

*See* *Marais des Cygnes Valley Teachers' Ass'n v. U.S.D. No. 456*, 264 Kan. 247, 251, 954

P.2d 1096 (1998) (factors showing mandatory).  So irrespective of whether the plaintiffs

have pled that Blue Valley has ever actually engaged in invidious discrimination is

---

[14] "The inquiry into the recipient's religious views required by a focus on whether a school is pervasively sectarian is not only unnecessary but also offensive. It is well established, in numerous other contexts, that courts should refrain from trolling through a person's or institution's religious beliefs." *Colorado Christian* at 1261.  But that is precisely what K.S.A. 72-6262 and K.S.A. 65-508 allows.

irrelevant: It is exactly that "Board members *could* engage in [unconstitutional, viewpoint-based] discrimination," *Forsyth Cty*, **505 U.S. at 133 n.10.** So Blue Valley may ask this Court to presume that Blue Valley has the authority to interpret the written statement as complying or that Blue Valley will act in good faith and adhere to standards not present in the statute. "But this is the very presumption that the doctrine forbidding unbridled discretion disallows." *City of Lakewood v. Plain Dealer Publishing Co.*, **at 770**.

There is the issue of S.F.B. being a special needs child. The statutory vaccination scheme creates a serious obstacle to the ability of Blue Valley to comply with its federal obligations to provide a free appropriate public education (FAPE) to children with disabilities such as S.F.B. As a special needs child under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq* ("IDEA"), the IDEA's mandate that such children as S.F.B. have a right to access their federally protected right to FAPE irrespective of vaccinations. When a legislative classification offends a fundamental right, such as the Free Exercise Clause, an equal protection challenge to that classification is subject to strict scrutiny. Where challenges have been raised in all other states with similar wording, one federal court provided for the religious exemption equally without reading any requirement regarding a religious denomination. In *Sherr v. Northport-East Northport Union Free School District* that court enjoined the school and state entities from applying the religious exemption from vaccination so as to make the exemption available only to "bona fide members of a recognized religious organization." *Sherr* ruled that the state "must offer the exemption to all persons who sincerely hold religious beliefs that prohibit the inoculation of their children." The *Sherr* court further held that "if New York wishes to allow a religiously-based exclusion from its otherwise compulsory program of

immunization of school children, it may not limit this exception from the program to members of specific religious groups, but must offer the exemption to all persons who sincerely hold religious beliefs that prohibit the inoculation of their children by the state."

In **Boone v. Boozman** that court held a similar Arkansas school immunization statute unconstitutional. In **Dalli v. Board of Education, 358 Mass. 753, 267 N.E.2d 219 (1971)**, that court severed a similar religious exemption provision. In **Davis v. State, 294 Md. 370, 451 A.2d 107 (1982)**, it similarly held the religious exemption statute unconstitutional. In **Kolbeck v. Kramer, 84 N.J.Super. 569, 202 A.2d 889 (1964)**, a New Jersey university required membership in an organized religion in order to qualify for a religious exemption. When a student applied for a religious exemption from the public university's mandatory vaccination policy, the university declined to grant the exemption, on the grounds that the student was not a member of an established religion.  The court reversed the university's decision, finding that the university did not have the right to judge whether a prospective student's religious beliefs were "sufficient" to qualify for the religious vaccination exemption. Where the student had indicated religious beliefs against vaccination and had proceeded according to the proper channels in seeking the exemption, he was entitled to the exemption, regardless of the fact that he was not a member of an organized religion.   The four cited cases demonstrate how the Kansas statutory scheme offends. And none of those cases considered how a four year old could possibly be an "adherent."  No Kansas statute or court has defined the meaning of "adherent." Clearly "adherent" is a status – what S.F.B. is.  While numerous courts refer to the word "adherent" without defining the word, those courts that do refer to the word always refer to the adherent as having "beliefs." *See e.g.* **Burwell v. Hobby Lobby Stores, Inc., at 2784** ("a

religious adherent *believes*...."); ***Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1315 (10th Cir.2010)** ("substantial pressure on an adherent to modify his behavior and to violate his *beliefs*.")

The adherent language, as applied to S.F.B. as a four year old, is meaningless.  It would be an illusory exemption in the context of those children unable to formulate religious beliefs.  What would be the State's compelling interest be in only allowing children who are mature enough to formulate a belief to exempt out while denying it to less mature children?  And if "religious denomination" is defined facially – as an actual established religious organization rather than a general concept of faith of the believer – requiring a four year old to be associated with or somehow adopt this particular organization's beliefs in order to avoid immunization not only favors one religion over another but requires S.F.B. to associate with this religious organization.

### Irreparable Harm and Equities Favor a Preliminary Injunction and Is Consistent With the Public Interest

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." ***Dominion Video Satellite, Inc. v. EchoStar Satellite Corp*., 269 F.3d 1149, 1156 (10th Cir. 2001)**. When first amendment freedoms are lost, even if for minimal periods of time, irreparable injury has occurred.  *See **Elrod v. Burns,* 427 U.S. 347, 373-74 (1976)**.  "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." ***Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir.2001)**.  *See **Adams ex rel. Adams v. Baker*, 919 F.Supp. 1496, 1504-05 (D. Kan. 1996)** (concluding that excluding the plaintiff from the wrestling team because of her gender deprived her of her right to equal protection and that this deprivation "itself"

constituted irreparable harm). There is certainly no equity in allowing the state of Kansas to enforce unconstitutional statutes. *See **Arizona Dream Act Coalition v. Brewer**, **757 F.3d 1053, 1069 (9th Cir. 2014)**.  The State "cannot suffer harm from an injunction that merely ends an unlawful practice." ***Rodriguez v. Robbins**, **715 F.3d 1127, 1145 (9th Cir.2013)**. The Blue Valley School District is bound to enforce K.S.A. 72-6262 and cannot have policies that are in conflict with that or other Kansas state law. *See **Missouri Pacific Railroad v. Board of Greeley County Comm'rs**, **231 Kan. 225, 227, 643 P.2d 188 (1982)**. Prohibiting Blue Valley from denying S.F.B. the benefits of school or FAPE would not alter the status quo of the parties.   Public education is a public interest. Kansas has expressed a public interest in protecting the plaintiff's rights in enacting the Kansas Preservation of Religious Freedom Act which concern government actions and a citizen's religious exercise. A public interest encompasses special needs children and their participation in the public school system.   "It is always in the public interest to prevent the violation of a party's constitutional rights." ***Awad v. Ziriax**, **754 F.Supp.2d 1298, 1308 (W.D.Okla.2010)**.

### Conclusion

Plaintiffs have demonstrated paths to strict scrutiny in more than one way.   They have made a *prima facie* case that K.S.A. 65-508 and K.S.A. 72-6262 were enacted with anti-religious motives and thus are not neutral. To be clear, the plaintiffs need not prove bad motive if those statutes discriminate on their face or if they are not generally applicable. The statutes do discriminate on their face and are not generally applicable.   Thus anti-religious motive is sufficient to trigger strict scrutiny, but it is not necessary. *See **Shrum v. City of Coweta**, **449 F.3d 1132, 1144–45 (10th Cir. 2006)** (collecting cases).

The Kansas mandatory school enrollment statute burdens religion without a compelling state interest in doing so. There is no compelling reason to inject S.F.B. with a vaccination once or twenty four times. Severance of the religious exemption while leaving the vaccination requirement expands the scope of who is required to be vaccinated. Declaring K.S.A. 65-508 and K.S.A. 72-6262 unconstitutional in their entirety does not foreclose the mandatory school enrollment statutes from functioning properly in allowing S.F.B. or other unvaccinated children to attend school. If the Court struck the religious exemption but left the medical exemption, the statutes would still be subject to a compelling interest test because providing a categorical and individualized medical exemption still removes it from a law of general applicability. It would not be applicable to adults and as to students it provides "individualized exemptions" (medical) and is therefore not a "generally applicable" law. In order to claim a medical exemption, a medical doctor must sign a statement regarding the student. The vaccination requirements are not generally applicable because they contain both categorical and individualized exemptions. The State legislatures made a value judgment: they provided a medical exemption and an illusory (as well as unconstitutional) religious exemption. The legislatures made a value judgment as to which religious objection merited recognition. If the religious exemption is severed leaving the medical exception, it would still be deemed more important than "herd immunity" and with that herd immunity being deemed more important than religion: medicine is more important than religion. Whether explicit or implicit, that is a value judgment that the Free Exercise Clause prohibits. And as to S.F.B. it is, in fact, no religious exemption at all. In practicality, the State provides a medical exemption but no religious exemption to S.F.B. and those similarly situated. The statute demonstrates that the secular

medical exemption, which can be applied to any student regardless of age, are more important than the religious one that discriminates based upon age, mental capacity, and religious affiliation.  *See* ***Church of Lukumi* at 524**; ***Rader v. Johnston*, 924 F.Supp. 1540 (D. Neb. 1996)** (Free Exercise Clause violated when secular exemptions to a rule requiring freshman to live on campus, but denied student wishing to live off campus in a religious group home). In the holding of a well-reasoned opinion by then-Judge Alito in ***Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365-66 (3d Cir. 1999),** that court held that a police department policy prohibiting officers from wearing beards triggered strict scrutiny because it allowed individual exemptions for medical but not religious reasons. "We are at a loss to understand why religious exemptions threaten important city interests but medical exemptions do not." ***Id.* at 367**. "While the Supreme Court did speak in terms of 'individualized exemptions' in ***Smith*** and ***Lukumi***, it is clear from those decisions that the court's concern was the prospect of the government's deciding that secular motivations are more important than religious motivations. If anything, this concern is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection but not for individuals with a religious objection." ***Id.*** ("we cannot accept the Department's position that its differential treatment of medical exemptions and religious exemptions is premised on a good-faith belief that the former may be required by law while the latter are not"). In ***Midrash Sephardi, Inc. v. Town of Surfside***, that court reviewed a zoning ordinance that excluded religious assemblies from the business district but provided a single exemption for lodges and private clubs. ***Midrash*** held this individualized exception "violates the principles of

neutrality and general applicability because private clubs and lodges endanger Surfside's interest in retail synergy as much or more than churches and synagogues." *Id.* **at 1235**. Medical exemptions present exclusions which would hinder heard immunity.  Why this exemption and not a religious one?  In ***Stinemetz v. Kan. Health Policy Auth*., 45 Kan. App.2d 818, 252 P.3d 141, 154-156 (2011)**, that court held rights were violated to a Jehovah's Witness Medicaid beneficiary when she was denied a request for an out-of-state bloodless liver transplant because, although the regulations generally did not cover out-of-state services, they allowed for individual exemptions on a case-by-case basis. ***Stinemetz*** incorporated the religious freedom provision in the Kansas state constitution to incorporate what would be the KPRFA's compelling-interest standard. "Where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Id.* **at 152**.  Under Kansas law, medical exemptions to vaccinations require proper religious accommodations.

**WHEREFORE** the plaintiffs request that the Court find that K.S.A. 65-508 and K.S.A. 72-6262 substantially burdens S.F.B.'s bodily integrity, the plaintiff's religion, and interferes with liberty interests in parenting, that there is no clear and convincing evidence that any of the defendants have a compelling interest in vaccinating S.F.B. or those similarly situated, that K.S.A. 65-508 and K.S.A. 72-6262 frustrates and stands as an obstacle to Blue Valley's federal FAPE obligations, they be declared unconstitutional in their entirety, and that the defendants, jointly and severally, be permanently enjoined from enforcing K.S.A. 65-508 and K.S.A. 72-6262 in their entirety.  The plaintiffs further request a preliminary injunction enjoining the defendants from expelling S.F.B. or denying continued attendance of his preschool and obtaining those federal and state public benefits.

By  /s/ Linus L. Baker
Linus L. Baker  KS Bar 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:   913.486.3913
Fax:            913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the Plaintiffs