IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **S.F.B.,** et al<br>　　　　　　　　Plaintiffs,<br>v.<br>**Blue Valley** et al<br>　　　　　　　　Defendants | 2:19-cv-02480-CM-JPO |

**PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY**

## Table of Contents

Introduction .................................................................................................................................. 1

Rule 23(c)(4) Certification ........................................................................................................... 2

Issues to Be Decided ..................................................................................................................... 2

Certification Under Rule 23(B)(2) And (3) Is Also Met In This Case .................................. 4

Numerosity ..................................................................................................................................... 4

Commonality .................................................................................................................................. 7

Typicality ........................................................................................................................................ 9

Fair and Adequate Representation of the Class ..................................................................... 10

Certification under Rule 23(b) .................................................................................................. 11

Predominance .............................................................................................................................. 12

Superiority .................................................................................................................................... 13

Conclusion .................................................................................................................................... 14

**Introduction**

While the court "must accept the substantive allegations of the complaint as true," "Rule 23 does not set forth a mere pleading standard." **Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)**. The "party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." **DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010)**. The "rigorous analysis" may overlap with the merits of the underlying claim. **Dukes at 351**. In those circumstances the Court "is not limited to the pleadings but may probe behind the pleadings and examine the facts and evidence in the case." **Tabor v. Hilti, Inc., 703 F.3d 1206, 1227-28 (10th Cir. 2013)**. In undertaking that analysis this Court "should not pass judgment on the merits of the case at the class certification stage." **Devaughn at 1194**. Although the class certification decision lies in the Court's discretion, close cases favor certification because the class can be modified as the case progresses. *See* **Daigle v. Shell Oil Co., 133 F.R.D. 600, 602 (D. Colo. 1990)**.

As to Rule 23, there are four threshold requirements: (1) "the class is so numerous that joinder of all members is impracticable";(2) "there are questions of law or fact that are common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately represent the interests of the class." **CGC Holding Co., LLC v. Broad & Cassel, 773 F.3d 1076, 1086 (10th Cir. 2014)**; **Fed. R. Civ. P. 23(a)(1)-(4)**. In a motion to certify, a plaintiff must also show that the case falls into one of the three

categories set forth in Rule 23(b). *Trevizo v. Adams*, **455 F.3d 1155, 1161-62 (10th Cir. 2006)**; *Shook v. El Paso Cty.*, **386 F.3d 963, 971 (10th Cir. 2004)**.

### Rule 23(c)(4) Certification

For the most part the bulk of the plaintiffs' relief comes by way of declaratory or prospective injunctive relief.  The plaintiffs seek to certify a putative class as a liability class. District courts frequently use Rule 23(c)(4) to bifurcate proceedings by first certifying an injunctive class under (c)(4) to determine liability, and then certifying a remedial class under (b)(3) to determine damages." *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.,* **907 F. Supp. 2d 492, 506 (S.D.N.Y. 2012)**.  Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." "Certification of an issues class is appropriate only if it permits fair presentation of the claims and defenses and materially advances the disposition of the litigation as a whole. If the resolution of an issues class leaves a large number of issues requiring individual decisions, the certification may not meet this test." **Manual for Complex Litigation (4th ed.) § 21.24.** Rule 23(c)(4) is commonly used to certify a class limited to liability issues, after which time individual class members will prove their damages in separate hearings. *Butler v. Sears, Roebuck & Co.,* **727 F.3d 796, 800 (7th Cir. 2013)**.  The issues are the same:

a) Whether the requirements under K.S.A. 65-508 that a "parent or guardian is an adherent of a religious denomination whose teachings are opposed to immunizations" is permissible under the U.S. Constitution or the Kansas Bill of Rights.

b) Whether the requirements under K.S.A. 72-6262 a "child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations" is permissible under the U.S. Constitution or the Kansas Bill of Rights.

c) Whether the U.S. Constitution or the Kansas Bill of Rights require a compelling state interest to require any child to be injected with vaccines which violate the child's bodily integrity.

d) Whether child care facilities or schools have authority or discretion to not follow K.S.A. 65-508 or K.S.A. 72-6262 as written or otherwise have discretion to interpret those statutes as not requiring parent or student to be "an adherent of a religious denomination" in order to validly object on religious grounds to vaccinations.

e) Whether the state of Kansas must have a compelling state interest to require parents to consent to vaccine injections which violate the bodily integrity of the child or else lose the benefit of a child care facility or school pursuant to the U.S. Constitution or the Kansas Bill of Rights.

f) Whether the state of Kansas must have a compelling state interest to require a parent or guardian to provide informed consent to vaccinate their child in exchange for obtaining a daycare or school benefit when this burdens the parent's or guardian's exercise of religion under the Kansas Preservation of Religious Freedom Act (K.S.A. 60-5303).

g) Whether, because of the combination of fundamental rights at issue, a hybrid rights analysis applies to K.S.A. 65-508 and K.S.A. 72-6262 requiring a compelling state interest.

The Court considers whether certification of these issues under 23(c)(4) will materially advance the litigation. *See* **In re Motor Fuel Temperature Sales Practices Litig., 279 F.R.D. 598, 609 (D. Kan. 2012)**.  The resolution of those questions would not merely materially advance the disposition of the litigation, it would likely altogether summarily dispose of the litigation.

Thus this Court considers only the issues on which plaintiffs seek 23(c)(4) certification in analyzing whether questions of law or fact common to class members predominate over any questions affecting only individual members.  For purposes of the proposed 23(b)(3) class the plaintiffs need only satisfy the 23(a) requirements with respect to the issues on which they seek 23(c)(4) certification, not for the class as a whole.  Thus the numerosity and adequacy analyses is not impacted by certification pursuant to

3

23(c)(4). However, the commonality and typicality requirements should be examined only with respect to the 23(c)(4) issues. *See* **Charron v. Pinnacle Grp. N.Y. LLC, 269 F.R.D. 221, 241 (S.D.N.Y. 2010)** ("When a Court chooses to limit class certification only to certain common issues under Rule 24(c)(4)… goes almost without saying that the related requirements of commonality and typicality are…met."); **Simon v. Philip Morris Inc., 200 F.R.D. 21, 29 (E.D.N.Y. 2001)** (Rule 23(c)(4) "accords district judges the discretion to certify a class action as to particular issues in a manner that treats common things in common and distinguishes the distinguishable, thereby satisfying Rule 23(a)'s requirements of commonality and typicality").

The fact the plaintiffs seek certification on particular issues under 23(c)(4) strongly weighs in favor of finding commonality. *See* **Charron, 269 F.R.D. at 241**; **Simon, 200 F.R.D. at 29**. *See also* **In re Tetracycline Cases, 107 F.R.D. 719, 729 (W.D. Mo. 1985)** (finding that "[i]n an abstract sense, at least, [the commonality] requirement is clearly met" where plaintiffs employ Rule 23(c)(4) to isolate common issues of law and fact).

## Certification Under Rule 23(B)(2) And (3) Is Also Met In This Case

<u>1. Numerosity</u>

Under Rule 23, a class must be "so numerous that joinder of all members is impracticable." There is "no set formula to determine if the class is so numerous that it should be certified." **Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978)**. Rather, "the determination is to be made in the particular circumstances of the case," *id.*, and is "a fact-specific inquiry best left to the district court's discretion." **Gonzales v. City of Albuquerque, No. CIV 09-0520 JB/RLP, 2010 WL 4053947, \*7 (D.N.M. Aug. 21, 2010)**. Factors bearing on this inquiry include "the nature of the action,

4

the size of the individual claims, and the location of the members of the class … that is the subject matter of the dispute." ***Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.,* 765 F.3d 1205, 1215 (10th Cir. 2014)**.

This Court and others within the Tenth Circuit have certified classes ranging in size from tens to hundreds of thousands of class members. *See, e.g.,* ***Rex*, 585 F.2d at 435** ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class"); ***Bennett v. Sprint Nextel Corp.,* 298 F.R.D. 498, 504-05 (D. Kan. 2014)** ("Courts have found that classes as small as twenty members can satisfy the numerosity requirement, and a good faith estimate of at least 50 members is a sufficient size to maintain a class action").

There are 105 counties in the state of Kansas. There are 291 school districts in the state of Kansas. KDHE requires each child care facility in each county to enforce K.S.A. 65-508 and in particular that in order to make a religious objection to vaccine injections that the parent must be an adherent of a religious denomination whose teachings are opposed to vaccinations. Every school district in the state of Kansas is subject to enforcing K.S.A. 72-6262 and in particular the requirement that in order to object to vaccine injections a student must be an adherent of a religious denomination whose teachings are opposed to vaccinations.

There is an available method to identify class members based on objective criteria. *See* **William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011)** ("Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry"). Defendant KDHE's records are sufficient to identify every class and class member. K.A.R. 28-1-20 requires

5

schools and child care facilities to document vaccinations and exemptions on the forms provided by KDHE. Those forms are used to report back to KDHE the information. KDHE requires a roster of all exempt students. Kansas maintains a Kansas Immunization Registry, referred to as KSWebIZ. It is a statewide registry for vaccinations/immunizations. Registry data is used by healthcare professionals to: monitor the immunization status of children and adults; assure compliance with state statutes on immunization requirements for individuals; identify geographic areas at high risk due to low immunization rates; and to document and assess vaccination coverage during disease outbreaks. Information for this database comes from many sources including vaccination and exemptions from each school's exemption roster and reporting. KDHE issues a Kansas Certificate of Immunizations (KCI) which identifies each student's vaccine history and any religious exemptions.

As to Class 1, the Kansas Kindergarten Immunization Coverage Assessment report (an annual survey conducted by the Kansas Department of Health and Environment (KDHE)) has conducted regarding kindergarten students between the ages of five and seven years covered by K.S.A. 65-508 or K.S.A. 72-6262 in the school year 2017-2018.[1] See Doc. 33-1. 750 schools responded out of 814 that were requested to provide information. KDHE reported that there were 539 kindergartners that had religious exemptions. *See* p. 8. The KDHE tracks child care facilities but has not made a similar report as to child care facilities outside of the school context. KDHE does have a record of religious objections for children in licensed daycare. *See* Kansas Certificate of Immunizations (KCI); *See* CCL 029 ("Medical Record For All Children In Child Care

---

[1] If private preschool, **K.S.A. 65-508** applies ("parent must be adherent….") If public preschool, **K.S.A. 72-6262** applies ("student must be adherent….")

Facilities, Including Provider's Own Children") *See* Doc. 33-2*.* In the form there is a signature space for the parent which states "(B) My child is exempt under the law from immunizations. As the Parent or Legal Guardian, I state that I am an adherent of a religious denomination whose teachings are opposed to immunizations."

Similarly, as to Class 2, older students subjected to K.S.A. 72-6262 whose parents make religious objections are recorded and reported by school nurses to KDHE.  Those students and parents can easily be ascertained from KDHE records.  Thus the number of children subject to the religious exemption from both classes can be easily ascertained from KDHE records. The nature of class demonstrates that joinder of each parent and student would be impracticable. In extrapolating the numbers, it is estimated that there are more than a thousand putative class members to each class. The parents and students are geographically decentralized with the same declaratory and injunctive relief claims that make individual prosecution unlikely.  With the number of school districts across the state of Kansas, numerosity exists.  This Court can use its common sense assumptions for that proposition extrapolating KDHE numbers. Together this makes joinder impracticable.

2. Commonality

Under Rule 23(a)(2), the plaintiffs must demonstrate that there is some question of fact or law common to each class. Not all questions of law and fact need be common to the class. "Even a single common question will do." **Dukes at 359.**  The presence of a common question coupled with the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke" is what matters. ***Id.*** Thus, the common question, though, "must be of such a nature that it is capable of class wide

7

resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." ***Id. at* 350**. The determination of the below common issues in this case can all be resolved together:

a) Whether the requirements under K.S.A. 65-508 that a "parent or guardian is an adherent of a religious denomination whose teachings are opposed to immunizations" is permissible under the U.S. Constitution or the Kansas Bill of Rights.

b) Whether the requirements under K.S.A. 72-6262 a "child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations" is permissible under the U.S. Constitution or the Kansas Bill of Rights.

c) Whether the U.S. Constitution or the Kansas Bill of Rights require a compelling state interest to require any child to be injected with vaccines which violate the child's bodily integrity.

d) Whether child care facilities or schools have authority or discretion to not follow K.S.A. 65-508 or K.S.A. 72-6262 as written or otherwise have discretion to interpret those statutes as not requiring parent or student to be "an adherent of a religious denomination" in order to validly object on religious grounds to vaccinations.

e) Whether the state of Kansas must have a compelling state interest to require parents to consent to vaccine injections which violate the bodily integrity of the child or else lose the benefit of a child care facility or school pursuant to the U.S. Constitution or the Kansas Bill of Rights.

f) Whether the state of Kansas must have a compelling state interest to require a parent or guardian to provide informed consent to vaccinate their child in exchange for obtaining a daycare or school benefit when this burdens the parent's or guardian's exercise of religion under the Kansas Preservation of Religious Freedom Act (K.S.A. 60-5303).

g) Whether, because of the combination of fundamental rights at issue, a hybrid rights analysis applies to K.S.A. 65-508 and K.S.A. 72-6262 requiring a compelling state interest.

All class members are subjected to the same statutory requirements. In that sense they are all fungible. The claims of the class members will rise and fall together depending on the answer to these questions. All of the members of the class share one or more of these common questions. "If the same evidence will suffice for each member to

8

make a prima facie showing, then it becomes a common question." ***In re Urethane Antitrust Litig.,* 768 F.3d 1245, 1255 (10th Cir. 2014)**. In other words, "when one or more of the central issues in the action are common to the class and can be said to predominate," the case may properly proceed as a class action, even though other important matters will have to be tried separately. **7A Wright, Miller & Kane, Federal Practice And Procedure: Civil 2d section 1778, at 529 (1986)**. "Class relief is consistent with the need for case-by-case adjudication, especially where it is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." ***Baby Neal v. Casey,* 43 F.3d 48, 57 (1994)**.

3. Typicality

Under Rule 23(a)(3), plaintiffs must demonstrate that their claims or defenses are "typical of the claims or defenses of the class." As a practical matter, resolution of the element of typicality may frequently merge with the issue of commonality, as both elements seek to determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence." ***Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n. 13 (1982)**.  Similar to commonality, the interests and claims of the representative and other class members need not be identical. "Differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." ***Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)**; *see also* ***Stricklin at* 1199** ("typicality exists where… all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances").

9

As with the commonality requirement, typicality is met. The claims are all based on the same legal theories and basic factual situation: plaintiffs are parents or students subject to the vaccination requirements including the requirement that parent or child be "an adherent of a religious denomination" in order to exercise a religious objection.

4. Fair and Adequate Representation of the Class

A plaintiff must show that he "will fairly and adequately protect the interests of the class" to comply with Rule 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" ***Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)**. The plaintiffs have the initial burden of demonstrating facts to support a finding that they will adequately protect the interests of the class. ***Decoteau v. Raemisch*, 304 F.R.D. 683, 689 (D. Colo. 2014)**. If the plaintiffs make a prima facie case of adequate representation, the burden shifts to the defendant. Id. Absent evidence to the contrary, a presumption of adequacy applies. *Id.*

There are no conflicts between Plaintiff, her counsel, or the other class members in this case. Counsel has, and will continue to, vigorously prosecute the action on behalf of the class. Counsel is the only attorney who has challenged the religious language in Kansas. Counsel initiated a similar suit in this Court and has persisted in vindicating those rights in this suit. Counsel is knowledgeable on the applicable law and has experience in civil rights actions, as well as complex litigation. Counsel has the financial resources as well as time to commit to litigating this matter. Counsel has communicated with numerous parental groups across Kansas about these issues. Counsel intends to

communicate or meet with any of the putative class members. Counsel understands to keep all class members up-to-date with this case and will act in the best interests of the entire class will ensure the case is prosecuted on behalf of the entire classes.[2]

Certification under Rule 23(b)

After determining that the Rule 23(a) factors are met, the Court must examine whether plaintiffs have shown that their proposed class action falls into one of the types of class actions listed in Rule 23(b). Rule 23(b)(2) applies when class members seek declaratory or injunctive relief and do not assert individualized claims for damages. It requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Class members are not entitled to notice and a right to opt out, although the court may provide such rights in its discretion.[3] Rule 23(b)(2) requires that a defendant has engaged in a common course of conduct that is applicable to all class members and that the class members' claims and interests are cohesive. **Shook v. Board of County Commissioners, 543 F.3d 597 (10th Cir.2008)**.[4]

---

[2] As applied to classes not certified pursuant to 23(b)(2). *See* **Skinner v. Uphoff, 175 F. App'x 255, 258 (10th Cir. 2006)** (district court did not abuse discretion by not requiring notice to members of (b)(2) class on claim for injunctive relief).

[3] The distinction is that 23(b)(2) classes are "opt-in" classes: 23(b)(3) classes are "opt-out" classes. *See* **Dukes, 564 U.S. at 361-63** ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action," while in "the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process").

[4] Advisory Committee Notes to Rule 23(b)(2) explains this category of class actions as follows:

This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief.

Plaintiffs also seek certification under Rule 12(b)(3), which allows for class certification where: (1) "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) the court finds "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1) Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)**. Courts have recognized that Rule 23(c)(4) effectively operates to isolate just those issues that predominate: "Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under [Rule 23(c)(4)] and proceed with class treatment of these particular issues." ***Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996)**. Courts give "careful scrutiny to the relation between common and individual questions in a case." ***Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016)**. They must ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Id. (quoting **2 William B. Rubenstein, Newberg on Class Actions § 4:49 (5th ed.**

---

The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration. [Citations.] Subdivision (b)(2) is not limited to civil-rights cases.

12

**2012)**). The "nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *In re Urethane Antitrust Litig.*, **251 F.R.D. 629, 633-34 (D. Kan. 2008)**. If the putative class members must present evidence that will vary from member to member to establish a prima facie case, then it is an individual question. *Garcia v. Tyson Foods, Inc.,* **255 F.R.D. 678, 690 (D. Kan. 2009)**.

If "one or more of the central issues in the action" are common to the class and can be said to predominate, the class may be certified under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. at* **1046** (quoting **7AA Charles Alan Wright, et al., Federal Practice & Procedure § 1778 (3d ed. 2005)**).

As explained above in the context of commonality, the claims of the plaintiffs and the putative classes in this case will rise and fall together depending on the interpretation of **K.S.A. 65-508** and **72-6262**. The questions presented regarding the interpretation of these statutes are questions of law not depending on facts. It is difficult to fathom how any of the putative class claims could be factually different concerning the statutory religious exemption language. All of the questions are common and it is unlikely any individual class member would have a significant interest in pursuing separate actions.

2) Superiority

A class action is the superior method for resolving the classes' claims because parents or students are unlikely to bring individual claims due to the cost of litigation. The factual and legal issues involved are virtually identical which counsels towards a class management. This meets the second requirement for certification under Rule 23(b)(3) as

13

"a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **Fed. R. Civ. P. 23(b)(3)**.[5]

The difficulties in managing the classes are virtually no different than managing the present plaintiffs' case but for communications with the putative class members. As to a class certified pursuant to 23(b)(2), that management is even more streamlined.  Class treatment is superior in this jurisdiction if "it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results." ***CGC Holding Co., LLC*, 773 F.3d at 1089**.  All of these factors weigh in favor of certification in the matter before the Court.

Because the classes meet both 23(b)(2) and 23(b)(3) standards, it can be certified as a hybrid class.  *See* **2 William B. Rubenstein et al., Newberg on Class Actions § 4.38 (5th ed.)**. This is accomplished by certifying a 23(b)(2) class for the injunctive portion of the case and a 23(b)(3) class for the damages portion if necessary.  *See **Buchanan v. Tata Consultancy Servs., Ltd.,* 15-cv-1696, 2017 WL 6611653, at \*23 (N.D. Cal., December 12, 2017)**.

## Conclusion

The Court is requested to certify the classes and issues for all of the reasons stated above.

---

[5] The Rule identifies four factors relevant to this inquiry:
 (A) the class members' interests in individually controlling the prosecution or defense of separate actions;(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. These factors are non-exhaustive. ***Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 345 (10th Cir. 1973)**.

15

          By /s/ Linus L. Baker
          Linus L. Baker  KS 18197
          6732 West 185th Terrace
          Stilwell, KS  66085-8922
          Telephone:   913.486.3913
          Fax:              913.232.8734
          E-Mail: linusbaker@prodigy.net
          Attorney for the Plaintiffs